DECISION
{¶ 1} Relator, Kathie J. Potts ("relator"), filed this original action, which requests that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled *Page 2 
to that compensation. Relator also asserts that the commission abused its discretion by refusing to exercise continuing jurisdiction over the matter.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed objections to the magistrate's decision. These objections relate to two alleged factual errors contained within the staff hearing officer's ("SHO") decision: (1) the SHO's statement, based on a statement of facts prepared by commission personnel, that relator had graduated from college; and (2) the SHO's statement that relator had the opportunity to engage in part time work, but did not follow through on the opportunity.
 {¶ 3} As to the latter point, we disagree with relator's assertion that the SHO mischaracterized the opportunity she may have had for work. The SHO's order indicates that she heard testimony on the issue, understood the circumstances, and then weighed the evidence. Taking relator's rehabilitation efforts and job search history into account, it was not an abuse of discretion for the SHO to conclude that relator was capable of vocational retraining.
 {¶ 4} As to whether relator graduated from college, we note that the SHO twice stated that relator was a college graduate. In reality, it appears that relator completed two years of college, but did not graduate. Nevertheless, the magistrate concluded that there was not an abuse of discretion because the SHO could rely on the statement of facts prepared by the commission, relator should have corrected the issue at the hearing, and two-year college programs do exist. The commission defends the *Page 3 
magistrate's decision, ultimately arguing that the evidence still supports the SHO's finding that relator's education is a positive factor.
 {¶ 5} As an initial matter, we note that no party disputes relator's assertion that she did not graduate from college. While an SHO might ordinarily rely on a statement of facts prepared by the commission, this statement contained a factual error. In addition, while we recognize that two-year college programs do exist, there is no evidence that relator attended such a program. Thus, the SHO's decision contained a factual error. We consider, then, whether the factual error had an impact on the outcome. We find that it did not. There is no indication that the SHO placed extraordinary reliance on whether relator had graduated from college. As the commission argues, there is overwhelming evidence to support the SHO's finding that relator's educational history was positive. She maintained a B average in high school, completed two years of college courses, underwent training to do computer repair work and networking, and completed a six-month administrative assistant course in 2002. Thus, even without a college degree, there is no question that her education was a positive factor. Accordingly, we overrule relator's objections.
 {¶ 6} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, as supplemented herein. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
 BROWN and KLATT, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} Relator, Kathie J. Potts, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation. Relator also argues that the commission abused its discretion by refusing to exercise continuing jurisdiction as requested by relator. *Page 5 
Findings of Fact: {¶ 8} 1. Relator sustained a work-related injury on December 17, 1994, and her claim has been allowed for "contusion of back; lumbosacral strain; aggravation of preexisting right lateral L2-3 disc herniation; herniated disc L3-4 and L4-5; adjustment disorder with depressed mood."
 {¶ 9} 2. Relator's first application for PTD compensation was denied in 2003.
 {¶ 10} 3. Relator filed her second application for PTD compensation in April 2006. Relator's application was supported by the November 2005 report of Robert A. MacGuffie, Ph.D., who had been treating her for her allowed psychological condition. Dr. MacGuffie opined that relator was unable to perform sustained remunerative employment.
 {¶ 11} 4. Relator was examined by Harvey A. Popovich, M.D., in September 2006. Dr. Popovich opined that relator's allowed physical conditions had reached maximum medical improvement ("MMI"), assessed a 23 percent whole person impairment, and opined that relator was capable of performing at a sedentary work level.
 {¶ 12} 5. Relator was also examined by Stanley M. Zupnick, Ph.D., in September 2006. With regard to relator's allowed psychological condition, Dr. Zupnick opined that relator had reached MMI and he assessed a 15 percent whole person impairment. Based solely upon the allowed psychological condition, Dr. Zupnick opined that relator was capable of working with certain limitations. *Page 6 
 {¶ 13} 6. The record also contains a vocational capacities evaluation performed in October 2006 by Barbara Gearhart, M.Ed., CRC, LPC. With regards to relator's education, Ms. Gearhart noted:
 Ms. Potts graduated from Roy C. Start High School in 1969. In 1993, she attended Stautzenberger Business College studying computer repair and computer networking. This training terminated when she had to move from the area. When she was in a position to resume her training, the technology had changed to such a degree that she would have had to start over which was not an option for her at the time.
 In 2002, Ms. Potts completed a 6-month Administrative Assistant course at the Academy of Technical Studies in Toledo, Ohio. She completed this training in an attempt to rehabilitate herself for work.
 {¶ 14} Further, with regards to relator's attempts at rehabilitation, Ms. Gearhart stated:
 On two occasions over the past 11 years, Ms. Potts has made attempts to rehabilitate herself for work. In 2002, she successfully completed a 6-month Administrative Assistant certificate program. She developed word processing and other general office skills. She states that it was difficult for her to sit at the computer during classes. She used a specially designated chair to ease her back pain and got up to move around at will. She participated in job placement activities and went out on several interviews. She notes that it was very painful getting into and out of her car as she made calls. He[r] doctor advised her to quit looking for work because she was in his office more often with increased pain. She became very discouraged and disappointed.
 In 2004, she contacted Michigan Rehabilitation Services for help in finding work. She was put in contact with a placement person who was unable to find a job match for her. Her file was ultimately closed. Ms. Potts even paid for a medical course to enhance her skills. *Page 7 
 {¶ 15} 7. Lastly, the record contains the statement of facts prepared following the filing of her April 2006 application for PTD compensation. With regards to relator's education, the statement of facts provides: "Graduated from Stautzenberger College in 1993." It was also noted that relator had completed an administrative office assisting program with accounting and medical coding and billing from the Academy of Technical Studies in March 2002. With regards to rehabilitation, the following was noted:
 5/24/02: Rehabilitation closed as injured worker successfully completed a short term training program in March of 2002 and exhausted 13 week[s] of job search services. No success in finding job.
 Injured worker does not indicate if she is willing to participate in rehabilitation services on IC-2.
 {¶ 16} 8. Relator's application was heard before a staff hearing officer ("SHO") on December 7, 2006 and was denied. The SHO relied upon the September 2006 reports of Drs. Popovich and Zupnick as well as the October 2003 reports of Drs. Lawrence A. Kale and Raymond D. Richetta which had been prepared in response to her first application for PTD compensation. The SHO found that relator was capable of performing at a sedentary work level and that her allowed psychological condition would permit her to return to some form of sustained remunerative employment. With regards to the nonmedical disability factors, the commission found that relator's age of 54 was a positive asset. With regards to her education, the commission stated:
 * * * The Injured Worker's education is also a positive factor in regard to her potential for a return to work. Not only did the Injured Worker have a B average in high school, she graduated from college. She underwent training to do computer repair work, and she underwent training to become an administrative office assistant, with specialty in accounting, medical coding and billing. *Page 8 
 {¶ 17} 9. The commission also found relator's varied work history positive as it included hands-on-work and people-oriented tasks. Further, the commission found that relator had developed the skills necessary to secure and maintain entry-level work to her prior work history as well as through her vocational retraining. With regards to relator's attempts at rehabilitation, the commission noted:
 In regard to the Injured Worker's rehabilitation efforts, the Hearing Officer finds that the Injured Worker did go through a Rehabilitation Program and had the opportunity to engage in part-time work. At today's hearing, it was noted that the Injured Work[er] was looking for full-time work at the time, and was not aware that the job she was interviewing for was a part-time position until she went through her interview. The Injured Worker's representative attempts to make a distinction between the Injured Worker's "refusing a job" and the fact that she "did not return for a second interview". The Hearing Officer finds that this is a distinction without a difference. Regardless, the Injured Worker failed to follow through on the opportunity for a position of employment. This Hearing Officer finds that the Injured Worker could have taken a part-time job and still looked for full-time employment, if she had chosen to do so. The Hearing Officer also notes that the Rehabilitation Closure on 6/4/2002, indicated that the Injured Worker still had other placement options open to her, that being several more months of free placement assistance at the Academy of Technical Studies, as well as LLC in a job search, and job search options left. As of the Staff Hearing Officer hearing of 1/23/2004, the Injured Worker stopped all job search and rehabilitation efforts and did not pursue any further placement through any other sources. This Hearing Officer notes that there is a letter in file from Michigan Rehabilitation Services regarding a closure on 12/22/2004 due to "significant barriers to employment presented by your disability." Because there is no information as to what factors were involved in the Michigan Rehabilitation Program and its closure, the Hearing Officer cannot make a determination as to the applicability of the rehabilitation effort made to Injured Worker's allowed conditions in this claim. Therefore, the Hearing Officer finds that there is not reliable evidence in the file that the Injured Worker is not capable of vocational retraining. *Page 9 
 {¶ 18} 10. Relator filed a request for reconsideration on grounds that the SHO's decision contained clear mistakes of fact. Relator stated in an affidavit that she did not graduate from college in 1993. Specifically, relator averred as follows:
 * * * Contrary to the findings of the Staff Hearing Officer, I did not graduate from college in 1993. During 1992 and 1993, while working at Impact Products and prior to sustaining the injury involved in this claim, I took classes at Stautzenberger College in the field of computer repair and networking. In 1993, I received a certificate of completion reflecting that I had completed courses in the field of computer repair. I did not receive either a Bachelor's or associate's degree, and did not in fact graduate from college.
 {¶ 19} Relator then indicated that she continued to seek certification in computer networking and had taken two out of seven required certification exams before she sustained her work-related injury. Relator indicated that she failed the third certification test and found that, in the two to three years since her training, changes in both technology and curriculum made much of what she had learned obsolete and never completed her certification in networking. Further, relator argued that the SHO's finding that she had failed to accept or pursue employment opportunities was improper. Specifically, relator averred as follows:
 * * * The Staff Hearing Officer incorrectly concluded that I "had the opportunity to engage in part-time work" and "failed to follow through on the opportunity for a position of employment." As I testified at my hearing, I had applied for a full-time position at Fulton County Health Center. I went to an interview for a position with a new physician who was joining the staff at Fulton County Health Center. During the initial interview, I learned that the job was part-time. I was also told that everyone who had been interviewed would have a second interview, with the physician, before the job would be offered to anyone. Because I needed and had applied for full-time work, I did not attend the second interview. I was never offered a job by Fulton County Health Center or the doctor. I was one of approximately 12 *Page 10 
candidates to interview for this job, and even had I attended the second interview, I would not necessarily have been offered the job. After this, I continued to seek full-time employment, and interviewed for at least three other jobs, without receiving any offers, before I discontinued my job search on the advice of my doctor, who told me that I could no longer work.
 {¶ 20} 11. The commission denied relator's request for reconsideration by an order mailed February 8, 2007.
 {¶ 21} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 23} Relator does not contest the medical evidence upon which the commission relied. Instead, relator focuses on the commission's analysis of the nonmedical disability factors. Specifically, relator argues that the commission's order *Page 11 
contained clear mistakes of fact with regards to her education and her opportunities for other work. Relator further argues that the commission should have granted reconsideration because she proved that the commission's order denying her application for PTD compensation contained these mistakes of fact. The commission argues that relator's educational level was a positive factor whether or not she actually graduated from college in 1993 and that the commission would have denied her application for PTD compensation even if she had not graduated from college. Further, the commission argues that the "job interview" issue was only one of many evidentiary factors cited by the SHO in the context of relator's rehabilitation efforts and that the SHO merely considered the evidence that relator refused to attend a second interview and whether or not it contributed to the reliability of the evidence regarding relator's vocational retraining capabilities. The commission asserts that relator is asking this court to reweigh the evidence and requests that her writ of mandamus be denied.
 {¶ 24} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. *Page 12 
 {¶ 25} Relator contends that the commission abused its discretion when it found that she had completed college in 1993. Without addressing whether or not relator actually did or did not graduate from college in 1993, the magistrate finds that the commission's finding did not constitute an abuse of discretion. As noted in the findings of fact, the statement of facts prepared before the hearing on her application indicated that she had "Graduated from Stautzenberger College in 1993." This, in and of itself, would constitute "some evidence" upon which the commission could have relied in making this finding. Furthermore, relator could have corrected this error at the hearing. Also, on her application for PTD compensation, relator indicated that she attended Stautzenberger Business College for two years. The vocational evaluation prepared by Ms. Gearhart indicates that relator attended Stautzenberger Business College in 1993 and studied computer repair and computer networking. Ms. Gearhart did indicate that relator's training was terminated when she moved from the area and that, when she was in a position to resume her training, the technology had changed. These statements do not necessarily contradict the statements aforementioned concerning relator's college education, especially since the commission is not required to consider or rely on vocational reports submitted by the parties. It was incumbent upon relator to ensure that the issue of her education was correct. Further, inasmuch as some colleges offer two-year studies in particular areas, the magistrate finds that this is also some evidence that relator had completed college. As such, the commission did not abuse its discretion in finding that she had graduated. *Page 13 
 {¶ 26} Relator also challenges the commission's handling of her rehabilitation efforts. Essentially, relator contends that the commission abused its discretion by holding her rehabilitation efforts against her. This magistrate disagrees.
 {¶ 27} First, the SHO noted that relator had an opportunity to pursue a part-time job. Relator declined to do so. Second, the SHO noted that relator's rehabilitation file was closed in June 2002, although relator still had other placement options and several months of free placement service remaining. Third, the SHO noted that relator stopped looking for any work in 2004 and that her rehabilitation file was closed due to significant barriers to employment presented by her disability. The SHO found that explanation was devoid of any reasoning and so found it to be unreliable regarding relator's ability to pursue further vocational retraining. All of these findings are contained in the record. As such, the commission's reliance on these facts did not constitute an abuse of discretion. Further, the commission did not determine that relator's PTD application should be denied due to any failure on her part to pursue rehabilitation. The commission merely used these facts as part of its determination that relator retained the capacity to acquire new skills.
 {¶ 28} Relator was only 54 years old, graduated from high school, could read, write, and perform basic math, and had received specialized training for computers as well as training to become an administrative office assistant with emphasis in accounting, medical coding, and billing. Those skills could be utilized at a number of sedentary jobs. Further, relator does not contest that the commission found her prior work history to be positive. This prior work history provided her with the opportunity to use several different types of equipment, taking customer orders, dealing with money, *Page 14 
customer service, packaging, and reading blueprints. Based on all the evidence presented, the magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation, even if it is accepted that she did not graduate from college in 1993 and that she did not turn down or pursue a specific job. Relator also argues that the commission abused its discretion when it denied her request for reconsideration. Relator asserts that she established that the order denying her PTD compensation contained clear mistakes of fact which warranted reconsideration.
 {¶ 29} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In State ex rel.B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538, 541-542, the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated:
 R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, e.g., State ex rel. Gatlin v. Yellow Freight System, Inc. (1985), 18 Ohio St.3d 246 * * * (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston (1979), 58 Ohio St.2d 132 * * * (just cause for modification of a prior order includes new and changed conditions); State ex rel. Weimer v. Indus. Comm. (1980), 62 Ohio St.2d 159 * * * (continuing jurisdiction exists when prior order is clearly a mistake of fact); State ex rel. Kilgore v. Indus. Comm. (1930), 123 Ohio St. 164
* * * (commission has continuing jurisdiction in cases involving fraud); State ex rel. Manns v. Indus. Comm. (1988), 39 Ohio St.3d 188 * * * (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and State ex rel. *Page 15 Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85 * * * (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law. * * *
 {¶ 30} In her affidavit, relator states that she did not graduate from college in 1993. She indicates that she took classes at Stautzenberger in the field of computer repair and networking and, in 1993, she received a certificate of completion. Although she goes on to indicate that she did not receive a bachelor's or associate's degree, her statements do not necessarily indicate that the SHO's order contained a clear mistake of fact. R.C. 4123.52 grants the commission continuing jurisdiction to make a modification or change as is justified. Relator asserts that this error was prejudicial; however, given that her educational pursuits were only used as evidence that she could obtain new skills, relator has not demonstrated prejudice which would require the commission to exercise its continuing jurisdiction. The magistrate finds that the commission did not abuse its discretion by denying her request for reconsideration on this ground.
 {¶ 31} With regards to her rehabilitation and her opportunities for other work, the magistrate again concludes that the commission did not abuse its discretion in refusing to exercise its continuing jurisdiction in this matter as relator has not demonstrated a clear mistake of fact which the commission was unjustified in refusing to change. In addition to the commission's statement concerning relator's failure to pursue a part-time job, the SHO had also cited the rehabilitation closure report from June 2002, which indicated that relator still had other placement options available to her including free placement assistance. The SHO also noted the letter from Michigan Rehabilitation *Page 16 
Services from December 2004, indicating that her file was closed due to a significant barrier to employment presented by her disability. The SHO correctly noted that the letter did not provide information as to what factors were involved in that decision. The SHO believed that relator was still capable of vocational retraining.
 {¶ 32} Even if the commission's findings with regards to this issue are wrong, the magistrate finds that did not necessitate the commission exercising its continuing jurisdiction. The SHO determined that relator was not entitled to PTD compensation based upon the finding that relator could perform some sustained remunerative employment at a sedentary level and that her psychological condition did not preclude employment. Further, the SHO determined that relator's age, education, and prior work history were all positive factors with regard to her ability to secure entry-level employment. Based upon those conclusions alone, the SHO could have denied her application for PTD compensation without even addressing her attempts at rehabilitation. As such, the magistrate finds that the commission did not abuse its discretion by refusing to exercise its continuing jurisdiction to correct this alleged error.
 {¶ 33} Based on the foregoing, it is the magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny her request for a writ of mandamus. *Page 1