DECISION
{¶ 1} The Ohio Department of Transportation ("ODOT") filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to *Page 2 
vacate its order granting permanent total disability ("PTD") compensation to Edward J. Davis ("Davis").
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the requested writ.
 {¶ 3} Counsel for ODOT has filed objections to the magistrate's decision. Counsel for the commission has filed a response. Counsel for Davis has also filed a memorandum in response. The case is now before the court for review.
 {¶ 4} A staff hearing officer ("SHO") found that Davis was medically incapable of sustained remunerative employment. This finding was based upon two separate medical reports, one by a commission expert, which indicated that Davis was permanently and totally disabled.
 {¶ 5} The SHO also found that Davis had not voluntarily abandoned the job market when years earlier Davis had accepted a buyout from ODOT. At the hearing before the SHO, Davis testified that the buyout was an encouragement, but he (Davis) accepted the encouragement because of the various medical problems and accompanying pain he suffered as a result of his on-the-job injuries. Davis's medical problems were fully documented and the evidence before the SHO exceeded the "some evidence" required to support the SHO's findings. ODOT's first objection which contests this issue is overruled. *Page 3 
 {¶ 6} In its second objection, ODOT suggests that the medical report of one of the physicians who indicated that Davis was incapable of sustained remunerative employment did not constitute some evidence to support the award of PTD compensation. ODOT argues that the physician found Davis to be capable of sedentary employment, so not medically incapable of sustained remunerative employment.
 {¶ 7} An independent review of the report of this physician, Dr. Hirst, clearly reveals no equivocation. Dr. Hirst expressly indicates that Davis is permanently and totally disabled from the injuries allowed in this workers' compensation claim and only from the injuries allowed in this claim.
 {¶ 8} In addition, the report of Dr. Weissglass, the commission specialist, does not have to be totally disregarded. Dr. Weissglass felt that the lack of treatment of Davis's elbow problems prevented Dr. Weissglass from finding that Davis's elbow problem had reached maximum medical improvement ("MMI"). The SHO could legitimately disagree because MMI does not require a permanent medical state, only a plateauing of the medical state. Davis's elbow had been a consistent medical condition for years, allowing the SHO to find MMI with or without Dr. Weissglass's finding.
 {¶ 9} The medical evidence fully supports the SHO's finding that Davis was medically incapable of sustained remunerative employment.
 {¶ 10} The second objection filed on behalf of ODOT is overruled.
 {¶ 11} As a result, we adopt the findings of fact contained in the magistrate's decision. We adopt the conclusions of law with respect to the abandonment of employment issue and with respect to the ability of the report of Dr. Hirst to constitute some evidence in support of the award of PTD compensation. We do not adopt the *Page 4 
conclusions of law with respect to the report of Dr. Weissglass, finding instead that the SHO could find Davis's elbow problem to have reached MMI and to rely on the balance of Dr. Weissglass's report as support for an award of PTD compensation.
 {¶ 12} As a result of the foregoing, we deny the requested writ of mandamus.
 Objections overruled; writ denied. BROWN and McGRATH, JJ., concur. *Page 5 
 APPENDIX A (REGULAR CALENDAR) Rendered November 18, 2008 MAGISTRATE'S DECISION IN MANDAMUS {¶ 13} In this original action, relator, Ohio Department of Transportation ("relator" or "ODOT"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") *Page 6 
compensation to respondent Edward J. Davis ("claimant"), and to enter an order denying said compensation.
Findings of Fact: {¶ 14} 1. On June 10, 1991, claimant sustained an industrial injury while employed as a highway maintenance superintendent. On that date, while driving a truck on a state highway, claimant's vehicle was struck from behind by another vehicle. Thereafter, he was treated at a hospital emergency room and released.
 {¶ 15} 2. The industrial claim (No. PEL102036) is allowed for:
 Strain low back, cut right arm and right elbow; contusion knees; disc bulge L3-4; central disc herniation L4-5; aggravation of pre-existing arthritis of both knees; osteoarthrosis bilateral.
 {¶ 16} 3. On April 23, 1999, claimant filed an application for an increase in his percentage of permanent partial disability ("PPD"). In support, claimant submitted a report from Jeffrey J. Fierra, M.D., dated April 12, 1999. In his report, Dr. Fierra wrote:
 * * * Presently he complains of occasional sharp pains involving the region of the olecranon and constant stiffness of the right elbow. He reports constant aching pain and stiffness of the low back, difficulty with most lifting and bending, and aggravation of the low back symptoms by prolonged sitting, standing, driving, or walking, cold or damp weather, and changes of weather. He describes difficulty sleeping due to low back pain, a high degree of aching pain and stiffness of the low back following a.m. rising, and intermittent radiation of pains along the posterior aspects of both entire lower extremities. He complains of constant aching pain, stiffness, and swelling and intermittent "cracking and popping" and giving out of both knees. These symptoms are generally elicited and/or aggravated by prolonged standing or walking, ascending or descending stairs, cold or damp weather, and changes of weather. He describes inability to kneel on either knee and inability to squat due to his problems with either knee. *Page 7 
 * * *
 Opinion: On the basis of the history obtained from Mr. Davis, the findings on the physical examination, and the information in and the impairment values of the Fourth Edition of the AMA Guides, the percentage of permanent partial impairment of the whole person in this right-handed individual including impairment for some loss of the grip strength of the right hand is estimated at 50%.
 {¶ 17} 4. On August 21, 1999, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), claimant was examined by Alok Bhaiji, M.D., who wrote:
 PRESENT COMPLAINTS: Presently the claimant states that he suffers a kink in his back that results in misaligned walking. He states that both of his knees give him difficulty when using stairs, as well as other simple tasks such as getting out of bed or trying to stand from a sitting position. He complains of not being able to get a good night's rest due to the pain. The patient is unable to bend past his waist without severe pain, which causes a hindrance in the simple tasks of putting on shoes, for example. He also states that his elbow doesn't have its full range of motion, with stiffness of such a degree that hinders straightening out the area. He feels that this injury has affected his daily living such as driving or performing any type of prolonged activity that involves the back and knees.
 * * *
 PERCENTAGE OF IMPAIRMENT: Based upon the AMA Guidelines Fourth Edition Revised, The Total [whole person impairment] for this Patient is 19%.
 {¶ 18} 5. Following an October 20, 1999 hearing, a district hearing officer ("DHO") issued an order awarding an increase of five percent PPD which increased PPD from 30 to 35 percent. The DHO's order states reliance upon the reports of Drs. Fierra and Bhaiji. *Page 8 
 {¶ 19} 6. Earlier, in May 1999, claimant accepted a "two-year buyout" and retired from his employment with relator. He was 66 years of age at the time of his retirement.
 {¶ 20} 7. On February 20, 2007, at claimant's own request, he was examined by Timothy Lee Hirst, M.D., who issued a six-page report. On page one of the report, Dr. Hirst correctly lists the allowed conditions of the claim.
 {¶ 21} On the second page, under the heading "complaints," Dr. Hirst wrote:
 The claimant is in pain all of his waking hours. He requires anti-inflammatory medicine. He gave up his church activities in 1991. The pain in his back starts in the middle back area and radiates through the buttocks down the back of his legs to traveling to the front of his legs. The pain then reaches his heel. The claimant is unable to run, jump or climb hills. Because of his back pain, he states that he "can't do much." Able to do only minimal housework, he relies on family for help. The claimant is able to care for himself for dressing and food preparation, but housework requires help as does any outdoor activities. He can only drive for 40 minutes stopping for frequent rests.
 {¶ 22} On pages four and five, Dr. Hirst details the findings of his examination. He states in part:
 Attention to the right elbow shows that there is no scaring from the cut. The resting position is normal. There is tenderness over the olecranon region. * * * There is no evidence of atrophy. * * * The right thumb and index have ulnar sensory loss 50%.
 * * *
 The right knee shows evidence of replacement surgery. * * *
 The left knee shows evidence of the same replacement surgery[.] * * *
 He wears support stocking[s] on both legs to control the +1 edema. *Page 9 
 * * *
 Attention to the lumbosacral region shows there [is] no evidence of scarring or surgery. Gait is very slow, a 15 degrees forward tilt, and involves outreaching for support for objects as he approaches or passes them. The back resting position is a 12 degree forward tilt. * * *
 * * *
 Mental Status and Cognitive:
 * * * The pain prevents any significant sleep period and he lives on napping.
 Functional Capacity:
 * * *
 He is able to lift up to 10 Lbs (on an occasional basis)[.] * * *
 He is not able to walk, bend, stoop, climb, or crawl.
 * * * He can walk 5 minutes before resting[.]
 * * *
 He can walk for 50 feet before having to stop and rest[.] * * *
 {¶ 23} On the last page of his report, Dr. Hirst writes:
Discussion
 Mr. Davis is severely limited by his allowed conditions in this claim. The majority of this restriction is the back and lower extremities with the multiple allowed lumbosacral and knee conditions and the ensuing knee replacements. He avoids strong pain medication as they cause such fatigue and grogginess that he cannot function at all with them. He cannot stand that feeling and cannot function that way, and has there fore [sic] to endure most of the pain. He is not functionally able with movement of strength of the back and *Page 10 
knees to perform and [sic] sustained remunerative employment.
 Conclusion
 Based on sound medical reasoning, Mr. Davis is totally and permanently disabled from the injuries allowed in this claim, and only from the injuries allowed in this claim. He is unable to perform any sustained, remunerative employment. No reasonable employer would pay wages to work from an employee at his level of function. He is [a] hazard to himself and others to even be in a work place. The injuries in this claim are permanent, have reached maximum medical improvement, and have no curative treatments.
 {¶ 24} 8. On July 6, 2007, at the commission's request, claimant was examined by Barry Weissglass, M.D. In his six-page narrative report, Dr. Weissglass notes that claimant had a right total knee arthroplasty on May 17, 2001, and a left total knee arthroplasty on May 2, 2002. He notes that claimant is currently using "over-the-counter anti-inflammatory medicines." On page five of his report, Dr. Weissglass concludes that claimant has reached maximum medical improvement ("MMI") "as far as his low back and his knees are concerned." He estimates a 40 percent whole person impairment, excluding the right elbow. He then addresses the right elbow:
 Mr. Davis has not reached Maximum Medical Improvement. It is not clear he has had a complete evaluation of the loss of range of motion of his right elbow as yet. However, using his current measurements, were he to not be able to be improved, he would have a 4% impairment to the upper extremity due to lack of flexion as well as a 2% impairment of the upper extremity due to lack of extension for a total of a 6% impairment to the upper extremity which is equal to a 4% impairment of the whole person. If his current elbow impairment were added to his calculation using the Combined Values chart, he would have a 42% impairment to the whole person. *Page 11 
 {¶ 25} 9. On a physical strength rating form dated July 6, 2007, Dr. Weissglass indicates by checkmark: "This injured worker is incapable of work."
 {¶ 26} 10. Following an October 31, 2007 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation beginning February 20, 2007. The SHO's order explains:
 This order is based upon the reports of Drs. Hirst and Weissglass.
 All medical evidence on file has been reviewed and considered.
 It is found that proof on file shows that the injured worker was involved in a significant motor vehicle accident at work on 06/10/1991. Primarily his low back and both knees were injured. The injured worker was able to return to work, working with this employer until 05/30/1999. At that time, he did retire from his place of employment. He testified at hearing that part of the inducement to retire was a two-year buy out offered by the employer. However, the injured worker also gave credible testimony that his symptoms from the allowed conditions were giving him significant problems and were the main reason that he, at that time, chose to retire. It is noted that there was a Bureau of Workers' Compensation C-92 exam performed by a Dr. Bhaiji on 08/29/1999 [sic], and that Dr. Bhaiji did confirm the presence of significant complaints and findings related to the injury in this claim. It is specifically found that this was not a "voluntary retirement" for purposes of consideration of permanent and total disability compensation.
 The injured worker's application was supported by a report dated 02/20/2007 from Dr. Hirst. Dr. Hirst essentially found the injured worker to be permanently and totally disabled.
 The injured worker was also examined on behalf of the Industrial Commission on 07/07/2007 by Dr. Weissglass. Dr. Weissglass found significant restrictions related to the injured worker's allowed low-back and bilateral knee conditions, as well as his right elbow condition. Dr. Weissglass's comments that the injured worker's right elbow *Page 12 
condition was not at a level of maximum medical improvement are not found persuasive, in that the injured worker has had little or no treatment for his right elbow over the years, and no further treatment is pending. The remainder of Dr. Weissglass's report is found persuasive. Further, he did complete the "physical strength rating" form, indicating his belief that the injured worker is incapable of work.
 Based on the findings of Dr. Hirst and of Dr. Weissglass, it is found that the injured worker is permanently and totally unable to perform any type of sustained remunerative employment on a medical basis alone. Therefore, further consideration of the non-medical disability factors is not necessary or required.
 {¶ 27} 11. On April 14, 2008, relator, Ohio Department of Transportation, filed this mandamus action.
Conclusions of Law: {¶ 28} As the SHO's order of October 31, 2007 explains, the commission relied upon the reports of Drs. Hirst and Weissglass to support its determination that the industrial injury itself precludes all sustained remunerative employment. Thus, the commission found it unnecessary to consider the nonmedical factors such as age, education and work history.
 {¶ 29} The commission also found that claimant's May 1999 retirement was involuntary based upon claimant's hearing testimony and his significant medical complaints at the time of his retirement as noted by Dr. Bhaiji.
 {¶ 30} Two issues are presented: (1) do the reports of Drs. Hirst and Weissglass provide some evidence to support the commission's medical determination that the industrial injury itself precludes all sustained remunerative employment; and (2) did the *Page 13 
commission abuse its discretion in determining that claimant remained eligible for PTD compensation based on its finding that the May 1999 retirement was involuntary?
 {¶ 31} The magistrate finds: (1) the report of Dr. Hirst constitutes some evidence to support the commission's finding that claimant became PTD as of February 20, 2006; however, Dr. Weissglass' report does not provide some evidence of PTD. Accordingly, Dr. Hirst's report supports the award; and (2) the commission did not abuse its discretion in determining that claimant remained eligible for PTD compensation based upon its finding that the May 1999 retirement was involuntary.
 {¶ 32} Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 33} Turning to the first issue, the magistrate will initially address the February 20, 2007 report of Dr. Hirst.
 {¶ 34} Ohio Adm. Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications. Ohio Adm. Code 121-3-34(B) sets forth definitions.
 {¶ 35} Ohio Adm. Code 4121-3-34(B)(2) sets forth the five classifications of physical demands of work.
 {¶ 36} Ohio Adm. Code 4121-3-34(B)(2)(a) states:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. *Page 14 
 {¶ 37} Equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 38} A medical report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. State exrel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel.Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582.
 {¶ 39} According to relator, Dr. Hirst's functional capacity evaluation indicates that claimant is capable of sedentary work. Dr. Hirst finds that claimant "is able to lift up to 10 Lbs (on an occasional basis) and can lift 5 Lbs more often." He can also carry up to ten pounds on an occasional basis and can lift five pounds more often. In an eight-hour day, claimant can stand for two hours, sit for four hours, and rest for two hours. According to relator, these restrictions are consistent with the definition of sedentary work.
 {¶ 40} Given the above analysis, relator argues that Dr. Hirst's opinion that claimant is unable to perform sustained remunerative employment is contradicted by the functional capacity evaluation and, thus, the opinion is equivocal and cannot constitute evidence.
 {¶ 41} Even if this court were to accept relator's argument that Dr. Hirst's functional capacity evaluation indicates a capacity for sedentary work, the functional capacity evaluation was not the only factor that persuaded Dr. Hirst to opine that claimant is unable to perform sustained remunerative employment. *Page 15 
 {¶ 42} Throughout the report, Dr. Hirst addresses the pain claimant must endure. Under "Complaints," Dr. Hirst reports that "claimant is in pain all of his waking hours." Under the "Discussion" heading, Dr. Hirst notes that claimant "avoids strong pain medication as they cause such fatigue and grogginess that he cannot function at all with them." Because claimant "cannot function" with strong pain medication, he must therefore "endure most of the pain."
 {¶ 43} Under the heading "Conclusion," Dr. Hirst concludes that claimant is a "hazard to himself and others to even be in a work place."
 {¶ 44} Pain related to an industrial injury can be a factor to be considered by the examining physician in rendering an opinion in a PTD claim. State ex rel. Unger v. Indus. Comm. (1994), 70 Ohio St.3d 672,676; State ex rel. Paraskevopoulos v. Indus. Comm. (1998),83 Ohio St.3d 189.
 {¶ 45} Clearly, pain was factored into Dr. Hirst's opinion that claimant is unable to perform sustained remunerative employment. Contrary to what relator's argument seems to suggest, Dr. Hirst was not required to limit his disability opinion solely to the functional capacity evaluation.
 {¶ 46} Based upon the above analysis, this magistrate must reject relator's argument that Dr. Hirst's medical opinion is equivocal.
 {¶ 47} Citing State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452, relator further contends that Dr. Hirst's disability opinion considers nonallowed conditions. The magistrate disagrees.
 {¶ 48} Nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. Waddle. However, the mere presence of a nonallowed *Page 16 
condition does not in itself destroy the compensability of the claim.State ex rel. Bradley v. Indus. Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 49} Here, relator points to Dr. Hirst's reporting of claimant's complaints. Dr. Hirst reported that: "The pain in his back starts in the middle back area and radiates through the buttocks down the back of his legs to traveling to the front of his legs."
 {¶ 50} According to relator, Dr. Hirst's reporting of the pain radiating down the legs is attributable to "degenerative scoliosis and spinal stenosis, conditions not allowed in this claim." (Relator's reply brief, at 8.) Relator points out that those nonallowed conditions were discussed in the February 1, 2006 report of Mark D. Smith, M.D., which is among the reports Dr. Hirst lists as being reviewed. (Relator's brief, at 15; reply brief, at 8.)
 {¶ 51} Indeed, Dr. Smith does report "[b]ack and leg pain secondary to degenerative scoliosis and stenosis." However, that Dr. Hirst read Dr. Smith's report does not compel the conclusion that Dr. Hirst's disability opinion is based even in part upon nonallowed conditions.
 {¶ 52} It was within the commission's fact-finding discretion to accept Dr. Hirst's opinion that claimant is PTD "from the injuries allowed in this claim, and only from the injuries allowed in this claim." Under Waddle, that claimant may also suffer from scoliosis and stenosis does not destroy the compensability of the claim.
 {¶ 53} Based upon the foregoing analysis, the magistrate concludes that Dr. Hirst's February 20, 2007 report constitutes some evidence upon which the commission can and did rely. *Page 17 
 {¶ 54} Relator also challenges the report of Dr. Weissglass. Because Dr. Weissglass opined that the right elbow has not reached MMI, relator claims that his opinion that "[t]his injured worker is incapable of work," cannot constitute evidence supporting PTD. The magistrate agrees.
 {¶ 55} Ohio Adm. Code 4121-3-34(D) provides the commission's guidelines for the adjudication of PTD applications.
 {¶ 56} Ohio Adm. Code 4121-3-34(D)(1)(f) states:
 If, after hearing, the adjudicator finds that the injured worker's allowed medical condition(s) is temporary and has not reached maximum medical improvement, the injured worker shall be found not to be permanently and totally disabled because the condition remains temporary. * * *
 {¶ 57} This court has rejected the view that Ohio Adm. Code 121-3-34(D)(1)(f) requires that all allowed conditions of the claim must be at MMI before a PTD award may be entered. State ex rel. Ferrellv. Indus. Comm., Franklin App. No. 04AP-948, 2005-Ohio-3100. One or more allowed conditions of the claim need not be at MMI to sustain a PTD award if one or more other allowed conditions render the claimant PTD. Id. See, also, State ex rel. Galion Mfg. Div. Dresser Industries, Inc.v. Haygood (1991), 60 Ohio St.3d 38, 39-40 (a claimant with multiple allowed conditions is not required to show that each condition, standing alone, is work prohibitive).
 {¶ 58} Applying the Ferrell case here, the right elbow condition need not be at MMI to sustain the PTD award if there is some evidence relied upon by the commission that the remainder of the allowed conditions render the claimant PTD.
 {¶ 59} Thus, Dr. Weissglass' opinion that the right elbow condition is not at MMI does not, alone, render his report of no evidentiary value. If Dr. Weissglass were to *Page 18 
unequivocally opine that the remaining allowed conditions render claimant incapable of work, his disability opinion would constitute some evidence of PTD.
 {¶ 60} The problem is that Dr. Weissglass has not told us whether he included the temporary impairment related to the right elbow condition into his opinion that claimant is incapable of work, i.e., is incapable of sustained remunerative employment.
 {¶ 61} In an attempt to remedy the problem with Dr. Weissglass' report, the SHO found unpersuasive Dr. Weissglass' opinion that the right elbow condition is not at MMI, and then stated reliance upon the remainder of the report including the opinion on the physical strength rating form indicating that claimant is incapable of work. This was an abuse of discretion because the SHO does not know whether Dr. Weissglass included the temporary impairment related to the right elbow condition into his opinion that claimant is incapable of work.
 {¶ 62} At best, the SHO was left to speculate as to whether or not Dr. Weissglass included the temporary right elbow condition into his opinion that claimant is incapable of work. Moreover, neither the commission nor its hearing officers have medical expertise. State ex rel. YellowFreight Sys., Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56. Clearly, the SHO does not have medical expertise to cure the problem with Dr. Weissglass' report.
 {¶ 63} Although Dr. Weissglass' report is not some evidence upon which the commission can rely to support its PTD award, Dr. Hirst's report does constitute the some evidence needed to support the commission's determination that the industrial injury alone renders claimant PTD. Thus, the commission's reliance upon Dr. Weissglass' report is not fatal to its medical determination. Reliance upon Dr. *Page 19 
Weissglass' report itself does not present cause for the issuance of a writ of mandamus. Galion Mfg.
 {¶ 64} The second issue is whether the commission abused its discretion in determining that claimant remained eligible for PTD compensation based upon its finding that the May 1999 retirement was involuntary.
 {¶ 65} State ex rel. Baker Material Handling Corp. v. Indus.Comm. (1994), 69 Ohio St.3d 202, paragraph two of the syllabus, states:
 An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market. * * *
 {¶ 66} In State ex rel. McAtee v. Indus. Comm. (1996),76 Ohio St.3d 648, a case cited by relator, the court, applying Baker, upheld the commission's decision to deny a PTD award on grounds that the claimant's retirement in August 1989 was voluntary. The commission's decision pointed to the claimant's age of 62 years at the time he quit work and that he took a regular retirement rather than a disability retirement from his employer. He also chose to receive Social Security retirement benefits rather than Social Security Disability.
 {¶ 67} The McAtee court states:
 As for the question of whether McAtee abandoned the entire labor force, the commission's order does not explicitly address that issue. However, the commission relied on all of the evidence in the file and adduced at the hearing, and that evidence can only lead to the conclusion that McAtee abandoned the work force. His early retirement and receipt of Social Security benefits, his application for pension benefits, and his failure to seek other employment following his departure from Chrysler, all demonstrate his intent to *Page 20 
leave the labor force. Accordingly, we find that the disposition of the abandonment issue was implicit in the commission's order. * * *
Id. at 651.
 {¶ 68} Here, the SHO focused exclusively upon the question of whether the May 1999 retirement was voluntary. Apparently, the SHO did not look beyond this question. That is, the SHO did not determine whether claimant voluntarily abandoned the entire job market prior to becoming PTD as of February 20, 2007, and during those years following his involuntary retirement in May 1999.
 {¶ 69} Clearly, the commission relied upon some evidence to support its determination that the May 1999 retirement itself was involuntary under State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44 (a retirement is involuntary when it is causally related to the industrial injury). Claimant's hearing testimony that his symptoms from the allowed conditions were giving him significant problems at the time he chose to retire (and accept the two-year buyout) were corroborated by Dr. Bhaiji's report.
 {¶ 70} Thus, the SHO's order relies upon some evidence to support a determination that claimant's decision to retire in May 1999 was injury induced. Rockwell.
 {¶ 71} But claimant did not apply for PTD compensation until February 28, 2007, some seven and one-half years after his retirement. With the application, claimant presented medical evidence that he had become PTD as of February 20, 2007, the date of Dr. Hirst's report. *Page 21 
 {¶ 72} The SHO's order makes no factual inquiry into claimant's status during the some seven and one-half years between retirement and the PTD start date of February 20, 2007. Here, relator describes those years as follows:
 * * * After retirement Mr. Davis did not seek further employment, he re-located to South Carolina, refused further vocational rehabilitation, and never filed for social security disability benefits[.] * * *
(Relator's brief, at 7.)
 {¶ 73} As the commission points out here, paragraph two of theBaker syllabus controls. The commission argues:
 While there is evidence, as pointed out by ODOT, that Davis did not attempt to re-enter the job market, Baker requires that the worker be precluded from PTD "only when the retirement is voluntary and constitutes an abandonment of the entire job market." 69 Ohio St. 3d at 215
(emphasis added). In other words, the evidence must show that the retirement was truly voluntary — that is, not because of the injury — and an abandonment of the job market — that is, the worker made no attempt to find other work. To preclude Davis from eligibility for PTD, ODOT must show both that he retired voluntarily and that he abandoned the job market. While ODOT presented evidence that he did not look for other work, they presented no evidence that Davis's motive for retiring was not at least partly due to his injury-related symptoms.
(Respondent commission's brief, at 6.) (Emphases sic.)
 {¶ 74} The magistrate agrees with the commission's analysis. The SHO's order of October 31, 2007 determines that the May 1999 retirement was involuntary because it was injury induced. That determination is supported by some evidence, i.e., claimant's testimony and Dr. Bhaiji's report. Under paragraph two of the syllabus in Baker, the inquiry ends. *Page 22 
 {¶ 75} Based upon the above analysis, the magistrate finds no abuse of discretion by the commission under Baker.
 {¶ 76} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1