[Cite as *State ex rel. McKee v. Union Metal Corp.*, 2016-Ohio-1236.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Stephen McKee, | : | |
| Relator, | : | |
| v. | : | No. 15AP-414 |
| Union Metal Corporation and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

# D E C I S I O N

### Rendered on March 24, 2016

---

**On brief:** *The Mikulka Law Firm, LLC,* and *Angela J. Mikulka,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Stephen McKee, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. Because relator was deemed

capable of some sustained remunerative employment in 2000, but did not seek retraining or further employment thereafter, the magistrate found that the commission did not abuse its discretion in denying PTD compensation based on relator's voluntary abandonment of the workforce. Accordingly, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In his first objection, relator contends he did not voluntarily abandon the workforce because he relied on and followed the advice of his physician who declared him unable to work. We disagree.

{¶ 4} To be entitled to PTD compensation, a claimant must establish a casual relationship between the industrial injury and any loss of earnings. *State ex rel. Roxbury v. Indus. Comm.*, 138 Ohio St.3d 91, 2014-Ohio-84, ¶ 11 (applying this principle to temporary total disability compensation), citing *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 35. Absent the required causal relationship, the claimant is not eligible for compensation. *Id.* A claimant who has voluntarily abandoned the workforce for reasons not related to the allowed conditions is therefore not eligible for compensation because the necessary causal link between the allowed conditions and the loss of earnings is lacking. *Id.*, citing *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, ¶ 9. This is a question of fact for the commission to determine. *Id.*

{¶ 5} Here, the record reflects that relator abandoned his employment in the mid-1990s. Subsequently, relator applied for and received social security disability benefits. In 2000, relator applied for PTD compensation. The commission denied relator PTD because it determined he was capable of sustained remunerative employment. Nevertheless, relator did not seek or obtain further employment nor did he pursue vocational rehabilitation. Relator filed another application for PTD in 2014, which the commission denied. Relator did not appear and testify at the hearing before the staff hearing officer ("SHO"). Relator's failure to seek other employment or to pursue vocational rehabilitation when he was deemed capable of sustained remunerative employment is some evidence that relator voluntarily abandoned the workforce. On this record, we agree with the magistrate that the commission did not abuse its discretion in

determining that relator voluntarily abandoned the workforce for reasons unrelated to his allowed conditions, and therefore, was ineligible for PTD compensation. Accordingly, we overrule relator's first objection.

{¶ 6} In his second objection, relator contends that the magistrate erred when she failed to find that the bureau waived the voluntary abandonment affirmative defense. Relator also contends that there was no evidence presented that relator voluntarily abandoned the workforce. We find both contentions unpersuasive.

{¶ 7} Although relator asserts that the issue of voluntary abandonment was not raised at the hearing before the SHO, relator points to nothing in the record that supports this contention. The record does not contain a transcript of what was argued before the SHO. Therefore, the record does not indicate how the issue of voluntarily abandonment of the workforce came to the attention of the SHO. Relator has the burden in mandamus and has failed to meet that burden when he fails to support an alleged error with evidence in the record. *State ex rel. Ormet Corp. v. Indus. Comm.,* 10th Dist. No. 87AP-1187 (Sept. 26, 1989) (claimant, not the commission, bears the burden to prove entitlement to mandamus relief). If there is a deficiency in the record, it is because relator failed in his burden of proof. Accordingly, we overrule relator's second objection.

{¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

DORRIAN, P.J., and BRUNNER, J., concur.

———————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Stephen McKee, | : | |
| Relator, | : | |
| v. | : | No. 15AP-414 |
| Union Metal Corporation and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## MAGISTRATE'S DECISION

### Rendered on December 14, 2015

*The Mikulka Law Firm, LLC,* and *Angela J. Mikulka,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 9} Relator, Stephen McKee, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order finding that he is entitled to that compensation.

Findings of Fact:

{¶ 10} 1.  Relator sustained a work-related injury on March 10, 1993, while working for Union Metal Corporation ("Union Metal"). Relator's workers' compensation claim is allowed for the following conditions:

> CERVICAL SPRAIN/STRAIN; FOCAL SPINAL STENOSIS DUE TO MARKED DEGENERATIVE DISC BULGE AND SPUR FORMATION AT C5-6; NEUROTIC DEPRESSION.

{¶ 11} 2. Sometime in 1997, relator filed a motion asking that his claim be additionally allowed for cervical spinal stenosis and that he be awarded temporary total disability ("TTD") compensation.

{¶ 12} 3. The matter was heard before a district hearing officer ("DHO") on March 12, 1998.  The DHO found that relator's "claim has previously been additionally allowed for the condition of 'focal spinal stenosis due to marked degenerative disc bulge and spur formation at C5-6' by order of the Stark County Court of Common Pleas dated 7-10-97 and filed" and "the condition of 'cervical stenosis' is synonymous with the above allowance."

{¶ 13} Thereafter, the DHO discussed relator's request for TTD compensation and ultimately determined that he was not entitled to that award because he had voluntarily abandoned his employment with Union Metal.  Specifically, the DHO made the following findings and legal conclusions:

> With regard to the issue of claimant's entitlement to Temporary Total Compensation for the period from 4/19/97 to 3/12/98, the District Hearing Officer must address the employer's argument that claimant voluntarily abandoned his employment on or about 12/14/95. The employer maintains that in early 1995 claimant returned to work at his regular job as an "auto welder" after being on light duty for a several month period. Claimant continued to work in his regular job until September, 1995 at which time he requested leave due to personal problems with his family. This leave was to extend until sometime in December, 1995. Thereafter, claimant was to return beck to work as an auto welder with Union Metal.
>
> However, the employer alleges that instead of returning to work as an auto welder, claimant found other employment in October, 1995, as a truck driver with Victory Express. The

employer further maintains that claimant did not in fact return to work as an auto welder in December, 1995 and that claimant notified the employer that he would not be returning to work at Union Metal. For these reasons, the employer terminated the claimant's employment on December 14, 1995. And, for these reasons, the employer now asserts that claimant voluntarily abandoned his employment with Union Metal so as to preclude claimant's receipt of Temporary Total Compensation in this claim.

In response to the employer's argument, the claimant maintains that he sought employment with Victory Express in October, 1995 because his allowed physical conditions deteriorated to the point where he became precluded from further performing the essential functions of his job as an auto welder. Accordingly, claimant argues that he acquired work as a truck driver with Victory Express in an effort to find work within his restrictions. The claimant maintains that these facts, therefore establish that his failure to return to work at Union Metal was causally related to his allowed injuries rather than by a voluntary choice to be employed elsewhere.

In evaluating the merit of the employer's "voluntary abandonment" argument, the District Hearing Officer reviewed the medical reports within the claim file to ascertain if any work restrictions were in place during the October 1995 time frame---the time period in which claimant sought and secured employment as a truck driver with Victory Express. The file establishes that on 2/20/1995 Dr. Gilliland issued a report which set forth restrictions precluding claimant from lifting greater than 25 lbs., precluding claimant from performing repetitive work above shoulder level, and precluding claimant from activities involving turning of the head or bending of the neck. There were no other reports in the time period from 2/20/95 to 10/1995 in file which addressed claimant's restrictions.

The District Hearing Officer finds that the relevance and the credibility of the 2/20/95 report of Dr. Gilliland is undermined by the length of time between its issuance and the claimant's acquisition of employment at Victory Express in October, 1995. The Gilliland report is undermined as well by the actions taken by the claimant subsequent to 2/20/95. From the claimant's testimony at hearing, it was established that claimant returned to his job duties as an auto welder in early 1995 and that he continued to work in that position

nearly seven months before his "leave" period of September, 1995. The fact that claimant was able to perform his regular job duties for a seven month period of time casts suspicion on the necessity of the restrictions noted by Dr. Gilliland on 2/20/95. Furthermore, at hearing, claimant testified that his duties at Victory Express required lifting at times of objects nearly 100 Lbs. in weight. This testimony in and of itself also contradicts the validity of the necessity of the restrictions imposed by Dr. Gilliland as it establishes that claimant continued to perform tasks beyond his alleged capabilities even after he left Union Metal. And, these facts when considered together, negate the claimant's argument that he left his employment with Union Metal in October, 1995 because of the impairments stemming from his allowed conditions in this claim. (The District Hearing Officer finds claimant's argument that he was medically forced to leave his employment with Union Metal as a result of his allowed condition to be inherently contradictory when the new employment claimant secured was outside his work restrictions as well.)

{¶ 14} 4. Relator's appeal was heard before a staff hearing officer ("SHO") on April 22, 1998. The SHO denied relator's appeal and affirmed the DHO order.

{¶ 15} 5. On May 20, 1998, relator filed another motion requesting TTD compensation beginning March 13, 1998.

{¶ 16} 6. The matter was heard before a DHO on July 20, 1998 and was denied. Specifically, the DHO found that the March 12, 1998 DHO order, which was affirmed administratively, was res judicata.

{¶ 17} 7. Relator filed his first application for PTD compensation on November 19, 1999. In support of his application, relator submitted the August 13, 1998 report of Robert L. Gilliland, M.D., who opined that he was permanently and totally disabled, stating:

> The above patient remains under my care for injuries sustained in a work related injury on 03/10/93. He continues with pain in his neck and into his shoulder. He has headaches, numbness in the neck and burning down the left arm.
>
> H[e] has a diagnosis of cervical strain/sprain, spinal enthesopathy; cervical spinal stenosis, disc bulge C-6 with

spur formation; depression and post operative cervical fusion.

He underwent an anterior cervical fusion in Pittsburgh on 02/24/98, but has continued having pain in the neck and left arm.

I consider this patient to be permanently disabled from gainful employment.

{¶ 18} Relator also submitted the August 25, 1998 report of Larry K. Truzzie, who was treating relator for depression. Truzzie opined that relator was permanently and totally disabled as a result of his allowed psychological condition, stating:

Mr. McKee presented for counseling on 04-27-98 to deal with depression resulting from a neck injury suffered 03/93. Various treatments were unsuccessful and disc fusion was performed 02/98. At this point, the surgery appears to have been unsuccessful. He reports that the pain on the left side of his neck is greater than before the surgery as is the pain in his buttocks and left leg. While the pain in his left arm is unchanged, it now descends to his hand more frequently. He is able to dress without assistance. He shaves less often as the fusion of three discs in his neck makes it difficult and tiring to hold his head properly to see clearly to shave. He now takes a mid-shave break.

He continues on medication for depression as typical symptoms involving erratic sleep, appetite disturbance, depressed mood, inconsistent energy and impaired memory and concentration persist.

Given his self-report, my observations of his impaired gait and frequent pain in his neck and the effects of the depression, it is my opinion that Mr. McKee is unable to perform gainful employment at this time.

{¶ 19} 8. Relator's application was heard before an SHO on June 6, 2000. The SHO relied on two medical reports which have not been filed with the stipulation of evidence. The SHO found that relator was capable of performing some sustained remunerative employment and analyzed the non-medical disability factors as follows:

As Drs. Raghavan and DeRosa indicate claimant is unable to perform his former position of employment, an analysis of the non-medical disability factors is appropriate.

After reviewing claimant's age, education, and work experience, the Staff Hearing Officer concludes claimant can engage in sustained remunerative employment consistent with the restrictions of Drs. Raghavan and DeRosa.

Claimant is thirty-eight years of age and is classified as a younger person. This age is a positive factor with respect to re-employment as it gives claimant ample time to engage in a training program. Ms. Kolks, vocational evaluator, concurs in her report dated 4/27/2000. She indicates claimant's age would not preclude him from performing entry-level work.

Claimant's educational level is also a positive attribute. Claimant possesses a college degree with a major in accounting. Per claimant's counsel at hearing, claimant graduated from Bary University with his accounting degree. This demonstrates claimant's mental acumen and Ms. Kolks finds claimant's education would be consistent with the ability to perform skilled work.

Claimant's prior work activities consist of unskilled, semi-skilled, and skilled activity. Claimant has performed jobs as a bookkeeper, dump-truck driver, cable television installer, tractor-trailer truck driver, gun welder, and dental assistant. Clearly claimant has performed a variety of tasks, including some skilled activities, during his lifetime. Ms. Kolks notes that numerous positive temperaments are demonstrated, including doing precise work to close tolerances, doing repetitive work, working alone or apart from others, dealing with people, and making judgments and decisions.

Ms. Kolks analyzed the restrictions of Drs. Raghavan and DeRosa and found a host of jobs claimant could perform. Said jobs include animal-hospital clerk, insurance clerk, brokerage clerk, chauffeur, production assistant, and check cashier. The Staff Hearing Officer finds Ms. Kolks' opinion is well supported given claimant's education and work experience.

The claimant is a college graduate with experience in several skilled jobs. Thus, the Hearing Officer finds claimant retains the ability to perform entry-level unskilled and semi-skilled work. Accordingly, claimant's disability is not total in nature and the Application for Permanent and Total Disability benefits is denied.

{¶ 20} 9. Apparently, relator was paid some TTD compensation and the Ohio Bureau of Workers' Compensation ("BWC") declared an overpayment. As a result, relator filed a motion which the commission construed as a request to exercise continuing jurisdiction and declare the overpayment null and void. The basis for relator's request was his assertion that the DHO order from March 12, 1998, as well as the SHO order from April 22, 1998 finding that he had voluntarily abandoned his employment, were based upon a clear mistake of law. Relator's argument was based on the Supreme Court of Ohio's decision in *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376 (2000).

{¶ 21} The matter was heard before an SHO on December 19, 2014. The SHO denied relator's request because of relator's failure to pursue an adequate administrative remedy from the BWC and prior commission orders.

{¶ 22} 10. Relator filed his second application for PTD compensation on May 21, 2014. In support of his application, relator submitted the April 25, 2014 report of Thomas A. Thomas, D.C., who opined that relator was permanently and totally disabled, stating:

> After reviewing the results of the physical examination, his pain index, and taking into consideration his age, the continued deterioration of his conditions and based upon the subjective complaints and mechanism of injury, it is my medical opinion that, as a result of his injuries of March 10, 1993, Mr. McKee is **physically totally and permanently incapacitated from gainful employment, and IS entitled to permanent total disability benefits.**

(Emphasis sic.)

{¶ 23} Relator also submitted the June 6, 2014 progress note of Stephen A. King, M.D., who stated: "Occupational industrial injuries sustained and client unable to return to active employment."

{¶ 24} Relator also submitted the September 4, 2014 psychological evaluation of James M. Lyall, Ph.D., who opined that relator was incapable of working, stating:

> This claimant's impairment is moderate at 30% due to his neurotic depression. As such he would have great difficulty maintaining and performing usual, competitive work activities. He needs continued supportive mental health care.

{¶ 25} 11. Relator's second application for PTD compensation was heard before an SHO on March 4, 2015. The SHO denied his application. First, the SHO noted that relator's previous application for PTD compensation had been denied following a hearing on June 6, 2000 based upon a finding that he was able to perform some sustained remunerative employment. The SHO specifically noted that there was no documentation that relator had attempted vocational retraining following the denial.

{¶ 26} Thereafter, the SHO noted the issue of voluntary abandonment was first addressed in 1998 when TTD compensation was denied because relator had voluntarily abandoned his employment with Union Metal. The SHO noted that the issue of whether or not relator had abandoned the entire workforce had not been addressed in 1998 and set out to make that determination. Specifically, the SHO stated:

> After December 1995 there is no documentation contained within the record regarding any employment by the Injured Worker *from any actual employer.* However, from a review of the Injured Worker's Application in issue, the Injured Worker states that he last worked 03/11/1998 and that was with Union Metal Corp., the employer of record, and that he began to receive Social Security Disability benefits in 1998 at the rate of $1,000 per month. (See IC-2 Application pages 1 & 3).
>
> Given the above, this Staff Hearing Officer finds guidance in the decision set forth in *State ex rel. Garrison v. Indus. Comm.,* 2009 WL 1709041, (unreported decision of Tenth District Court of Appeals, Franklin County). Therein, the Court of Appeals overruled objections to the Magistrate's decision. The Magistrate states in his decision as follows:
>
> The case law indicates that a two step analysis is involved in the determination of whether a claimant has voluntarily removed himself from the work force prior to becoming PTD such that a permanent total disability award is precluded. The first step requires the Commission to determine whether the retirement or job departure was voluntary or involuntary. If the Commission determines that the job departure was involuntary, the inquiry ends. If, however, the job departure is determined to be voluntary, the Commission must consider additional evidence to determine whether the job departure is an abandonment of the work force in addition to an abandonment of the job. *State of Ohio ex rel.*

*Ohio Dept. of Transportation v. Indus. Comm.,* (Franklin App. No. 08AP-303, 2009-Ohio-700).

Utilizing this analysis, the Staff Hearing Officer finds that the prior District Hearing Officer decision from 1998, cited above, previously determined that the Injured Worker's departure from the Employer of Record did constitute a voluntary abandonment of the employment. However, although it is a final administrative decision, the issue of voluntary abandonment of the work force was never addressed. Here, the documentation of the Injured Worker's work history, other than with the Employer of Record, is basically limited to references in various medical reports and the IC-2 Application itself.

It was clearly found in the prior District Hearing Officer decision that the Injured Worker's departure from employment with the Employer of Record, was not based upon the Injured Worker's attempt to find suitable employment within his restrictions. Thereafter, the Injured Worker's purported employment with Victory Express is not documented within the record, nor is there any documentation within the record of any subsequent return to employment with the employer of record as reflected on this IC-2 Application. Furthermore, the Injured Worker was not present at hearing to offer any testimony in support of his Application or to clarify his work history.

In reliance upon the prior Staff Hearing Officer Permanent Total Disability decision finding the Injured Worker was capable of working at the entry level of work, at both the unskilled and semi-skilled levels, coupled with absence of any documentation regarding any employment history after the Injured Worker left the Employer herein, as well as the statement contained within the IC-2 Application indicating the Injured Worker began receiving Social Security Disability benefits in 1998, the Staff Hearing Officer concludes that the Injured Worker's departure from the work force was voluntary and constitutes a voluntarily abandonment of the entire work force.

The Injured Worker was found to have voluntarily abandoned his last documented position of employment; he began receiving Social Security Disability benefits in 1998; he was subsequently denied permanent total disability status pursuant to the 06/10/2000 Staff Hearing Officer decision on the basis that he was able to perform entry level work;

and there is no documentation contained within the record that the Injured Worker either returned to the work force or attempted vocational rehabilitation thereafter, as required by the *Cunningham* decision. *State ex rel. Cunningham v. Indus. Comm.* (2001), 91 Ohio St.3d 261. Therein it was stated that it is not "unreasonable to expect an injured worker to participate in return to work efforts to the best of his or her abilities or to take the initiative to improve rehabilitation potential." (Id. at p. 262) Continuing, the Ohio Supreme Court stated that while extenuating circumstances can excuse an injured worker's participation in re-education or retraining efforts, "Injured Worker's should no longer assume that a participatory role, or lack thereof, will go unnoticed."

In a light most favorable to the Injured Worker, the record reflects that the last known purported employment was with the employer herein, and ended 03/11/1998, over 17 years ago and during the same year the Injured Worker reports the commencement of monthly Social Security benefits. Furthermore, it is also almost 15 years since the first Permanent Total Disability Application decision finding the Injured Worker was capable of working, was issued.

When the totality of the circumstances are viewed, it is clear that the Injured Worker did make a life style choice and that was to voluntarily abandon the entire work force and effectively retire, for reasons other than allowed conditions in this claim.

(Emphasis sic.)

{¶ 27} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 28} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 29} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 30} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 31} Relator continues to challenge the finding of voluntary abandonment. At this time, relator argues that the attorney for the BWC who attended the March 4, 2015 hearing did not raise the issue of voluntary abandonment and, as such, the commission abused its discretion when it sua sponte considered the issue. Thereafter, relator asserts that, if the SHO did properly address voluntary abandonment, his departure from the workforce was injury-induced, and therefore is not a bar to an award of PTD compensation.

{¶ 32} As noted in the findings of fact, the SHO first reviewed the record concerning relator's request for TTD compensation and specifically noted that the commission had determined that relator's departure from Union Metal was not injury-induced and constituted a voluntary abandonment of the workforce. Thereafter, as the SHO correctly noted, a departure from the workforce which precludes the payment of TTD compensation does not necessarily defeat either a later application for TTD compensation or an application for PTD compensation. Where an injured worker re-enters the workplace and, as a result of the allowed conditions in their claim, becomes disabled, they may qualify for an award of TTD compensation even if their departure from their original employer was considered to be a voluntary abandonment. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305. Likewise, even if it is determined that an injured worker voluntarily abandoned their employment and, as such, is denied TTD compensation, if the employee re-enters the labor force, the employee may later qualify for an award of PTD compensation. However, if the injured worker,

despite an ability to do so, does not re-enter the workforce after they have voluntarily abandoned their employment with their original employer, they will be denied PTD compensation.

{¶ 33} In the present case, relator's original requests for TTD compensation were denied in 1998 based upon a finding that he had voluntarily abandoned his employment with Union Metal. At that hearing, relator had stated that, although he did leave his employment with Union Metal in 1995 and took employment as a truck driver with Victory Express, in part because his allowed conditions deteriorated, and he was no longer able to perform his job. This 1998 order occurred before the Supreme Court of Ohio released *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376 (2000) and *McCoy*, holding that an injured worker could leave the former position of employment for any reason and, as long as they took other employment, could be eligible for TTD compensation if the allowed conditions rendered them unable to perform this new job. Pursuant to *Baker* and *McCoy*, relator theoretically could or could have asked the commission to exercise its continuing jurisdiction and revisit this issue as it relates to his requests for TTD compensation; however, this 1998 order is immaterial to the reasons relator was denied PTD compensation.

{¶ 34} In 2000, relator's first application for PTD compensation was denied based upon a finding that he was capable of performing some sustained remunerative employment. In the years between 2000 and 2014, when relator filed his second application for PTD compensation, relator did not seek to be retrained nor did he seek any employment. Relator has remained unemployed since 1998. Based on those facts, the commission determined that relator had abandoned the entire workforce and was, therefore, ineligible for an award of PTD compensation. It is immaterial that relator submitted medical reports with his application from doctors who opined that he was permanently and totally disabled at this time. Because he made no attempts to re-enter the workforce between 1998 and 2015, it was not an abuse of discretion for the commission to find that it was not the allowed conditions in his claim which have prevented him from working, but that he had made a lifestyle choice.

{¶ 35} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it denied his application for PTD compensation and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).