[Cite as *State ex rel. Saia v. Indus. Comm.*, 2024-Ohio-2238.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Anthony Saia, | : | |
| Relator, | : | |
| v. | : | No. 22AP-667 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 11, 2024

**On brief:** *Nager, Romaine & Schneiberg Co., L.P.A., Catherine Lietzke,* and *C. Bradley Howenstein,* for relator.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent, Industrial Commission of Ohio.

**On brief:** *Stefanik, Iosue & Associates, LLC, Thomas J. Stefanik, Jr., Mary Eileen Purcell*, and *Stacy M. Stefanik*, for respondent City of Painesville.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Anthony Saia, seeks a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to grant his request to participate in vocational rehabilitation or, in the alternative, a limited writ remanding this matter back to the commission for rehearing on the merits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that Saia did not establish a clear legal right to the requested relief or that the commission was under a clear legal duty to provide it.

Accordingly, the magistrate recommended this court deny Saia's request for a writ of mandamus.  For the following reasons, we adopt the magistrate's decision.

{¶ 3}  On September 15, 2023, Saia filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 4}  Saia was employed as a construction worker for the city of Painesville, Ohio. On July 25, 2014, he fell while climbing down from a dump truck and sustained an injury in the course of and arising out of his employment.  Saia's workers' compensation claim was ultimately allowed for "sprain left ankle; sprain right knee; sprain left shoulder; contusion left shoulder; contusion upper left arm; contusion left elbow; left shoulder impingement syndrome; substantial aggravation of pre-existing tear medial meniscus right knee; substantial aggravation of pre-existing arthritis of right knee; left shoulder slap tear; tear of right lateral meniscus posterior horn; posterior right cruciate ligament tear; right chondromalacia patellae; progressive degeneration of right knee medial compartment." (Jan. 4, 2023 Record of Proceedings at 21002-W98.) Saia's claim was ultimately disallowed for: "cervical sprain, substantial aggravation of pre-existing sciatica; substantial aggravation of pre-existing sprain of neck, left; generalized anxiety disorder." *Id.*

{¶ 5}  Following the injury, Saia continued to work for the city of Painesville in a transitional capacity within the work restrictions imposed by his physician, Dr. Timothy Moore.  On September 10, 2019, a district hearing officer ("DHO") issued an order that allowed for additional conditions in Saia's claim and noted that physician's reports stated "that the original injury in this claim and allowed conditions have deteriorated into new conditions, based upon the Injured Worker's continuation of strenuous employment." (Record of Proceedings at 21002-X67.)  These additional conditions, as mentioned above, are: tear of right lateral meniscus posterior horn; posterior right cruciate ligament tear; right chondromalacia patellae; progressive degeneration of right knee medial compartment.

{¶ 6}  In a Physician's Report of Work Ability form ("MEDCO-14") dated October 22, 2019, Dr. David Copp stated that Saia was "not able to work for the City of

Painesville due to severe flare up of right knee pain necessitating the need for right knee surgery" and that "he had to stop work due to severe work flare up of [right] knee." (*Id.* at 21002-X59-X60.) An independent medical evaluation report from an October 22, 2019 exam stated that "the claimant reported he retired about 2 weeks ago, but up until that time he was working full duty. He does have significant limitations at home due to severe pain and disability from his right knee." (*Id.* at 21002 X49-X50.)

{¶ 7} September 30, 2019 was Saia's last day of work for the city of Painesville.

{¶ 8} On October 23, 2019, Saia filed a C-84 request for temporary total disability ("TTD") compensation and stated "work related injuries" as the reason for leaving his employment with the city of Painesville. (*Id.* at 21002-X45.) Saia also indicated on his C-84 request that he would consider participating in vocational rehabilitation.

{¶ 9} On January 2, 2020, the Bureau of Workers' Compensation ("BWC") issued an order granting Saia TTD compensation starting October 1, 2019. On February 24, 2020, Saia had a total right knee replacement surgery.

{¶ 10} Following a hearing on May 18, 2021, on a motion to terminate Saia's TTD compensation, a staff hearing officer ("SHO") with the commission found that Saia had reached maximum medical improvement ("MMI") and terminated TTD effective May 18, 2021.

{¶ 11} On November 22, 2021, Dr. Copp filed another MEDCO-14, in which he indicated that Saia would be a candidate for vocational rehabilitation, followed by a letter dated November 30, 2021, stating that vocational rehabilitation for Saia was reasonable and necessary. On December 2, 2021, Dr. Copp filed a C-9 request for vocational rehabilitation services for Saia.

{¶ 12} On December 8, 2021, the BWC issued an order denying Saia's request for vocational rehabilitation, finding that he did not have significant impediment to employment as a direct result of the allowed conditions in the claim. (Record of Proceedings at 21002-X6.) On January 14, 2022, a DHO vacated the BWC's December 8, 2021 order but nevertheless maintained the denial of Saia's request for vocational rehabilitation, stating that the DHO did not "find the evidence persuasive that [Saia] is eligible and feasible" for vocational rehabilitation. The DHO stated that Saia had reached MMI and that Saia had testified that he had retired and that it was not a disability retirement. The DHO

also noted that Saia was not receiving social security disability, that Saia had not re-entered the workforce in seven years, and that the evidence in the record did not indicate Saia intended to return to the workforce.

{¶ 13} Following a February 25, 2022 hearing on this matter, an SHO modified the DHO's order, yet still denied Saia's request for vocational rehabilitation. The SHO found there was a lack of intent to return to the workforce, that Saia did not have a significant impediment to return to the workforce as a result of the allowed conditions in his claim, and that Saia had not met his burden to show he is eligible for vocational rehabilitation. (*Id.* at 21002-W98.) On March 21, 2022, the commission refused Saia's appeal of the SHO's order.

{¶ 14} On November 1, 2022, Saia filed a petition for a writ of mandamus requesting that this court issue a writ ordering the commission to permit him to participate in vocational rehabilitation or, in the alternative, a limited writ remanding this matter back to the commission for rehearing on the merits. This court referred the matter to a magistrate.

{¶ 15} On September 6, 2023, the magistrate issued a decision and recommended that this court deny Saia's request for a writ of mandamus. The magistrate looked to Ohio Adm.Code 4123-18-03(B), which states:

> [a]n injured worker shall not be able to participate in a vocational rehabilitation plan or receive vocational rehabilitation services until the injured worker has been determined to be both *eligible* and *feasible* for vocational rehabilitation services.

(Emphasis added.)

{¶ 16} In determining eligibility and feasibility for vocational rehabilitation services, the magistrate looked to Ohio Adm.Code 4123-18-03 as was in effect at the time the commission resolved this matter, which states in relevant parts:

> (C) To be eligible for rehabilitation services the injured worker must meet the following criteria:
>
> (1) The injured worker has a claim that is
>
> (a) Allowed by an order of the bureau of workers' compensation or the industrial commission or of its hearing officers with eight or more days of lost time due to a work related injury; or
>
> (b) Certified by a self-insuring employer.

(2) The injured worker must have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the referred claim.

(3) The injured worker must have at least one of the following present in the referred claim:

(a) The injured worker is receiving or has been awarded temporary total, non-working wage loss, or permanent total compensation for a period of time that must include the date of referral. For purposes of this section, payments made in lieu of temporary total compensation (e.g. salary continuation) shall be treated the same as temporary total compensation; or

(b) The injured worker was granted a scheduled loss award under division (B) of section 4123.57 of the Revised Code; or

(c) The injured worker is not currently receiving compensation and has job restrictions in the claim documented by the physician of record and dated not more than one hundred eighty days prior to the date of referral; or

(d) The injured worker is receiving job retention services to maintain employment or satisfies the criteria set forth in paragraph (E) of this rule on the date of referral; or

(e) The injured worker sustained a catastrophic injury claim and a vocational goal can be established

(4) The injured worker must not be working on the date of referral, with the exception of referral for job retention services.

* * *

(G) Determination of feasibility for vocational rehabilitation services.

(1) Feasibility for vocational rehabilitation services means, based upon all available information:

(a) The injured worker is willing to participate in vocational rehabilitation services;

(b) The injured worker is able to participate in vocational rehabilitation services; and

(c) There is a reasonable probability that the injured worker will benefit from vocational rehabilitation services and return to work as a result of the services.

(2) "All available information" means records, documents, written and oral statements, and any and all medical, psychological, vocational, social, and historical data, of any kind whatsoever, developed in the claim through which vocational rehabilitation is sought or otherwise, that is relevant to the determination of an injured worker's feasibility for vocational rehabilitation services.

{¶ 17} The magistrate, in recommending this court deny Saia's complaint for a writ of mandamus, disagreed with Saia's argument that the commission abused its discretion in finding he was not feasible for vocational rehabilitation because he lacked the intent to return to the workforce. The magistrate reasoned that the commission could have relied on evidence in the record, including Saia's own testimony that he retired on September 30, 2019 and that it was not a disability retirement, to conclude that Saia did not intend to return to the workforce.

{¶ 18} The magistrate similarly dismissed Saia's argument that the SHO erred in finding both that Saia lacked an intent to return to the workforce and also that Saia did not intend to return to the workforce *until after his benefits under this claim were exhausted*. The magistrate reasoned that the two findings by the SHO were not "inherently contradictory" and that the SHO could have still concluded based on Saia's testimony that he lacked actual intent to return to the workforce.

{¶ 19} The magistrate also rejected Saia's contention that the SHO erred in finding he was not feasible for vocational rehabilitation because he had reached MMI. The magistrate agreed that attaining MMI does not preclude a finding that Saia could be feasible for vocational rehabilitation but held that the SHO was entitled to rely on MMI related records and other documentation in the record to determine Saia's feasibility for vocational rehabilitation.

{¶ 20} Finally, the magistrate considered Saia's argument that the commission erred in relying on the BWC's finding, based on Dr. Copp's MEDCO-14 from November 2021, that Saia lacked a significant impediment to returning to the workforce as a result of the allowed conditions in his claim. The magistrate noted that significant impediment is not defined, and that Saia provided no authority establishing the commission was prohibited from finding he lacked a significant impediment based on Dr. Copp's MEDCO-14. The magistrate also noted that the commission's determination regarding feasibility was an

independent basis for the commission to deny vocational rehabilitation.  (Sept. 6, 2023 Mag.'s Decision at ¶ 60.)

## II.  ANALYSIS

{¶ 21} Saia's objections to the magistrate's decision essentially restate the very arguments Saia raised before the magistrate, and which the magistrate fully addressed.

{¶ 22} To be entitled to relief in mandamus, Saia must establish that he has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that there is a lack of an adequate remedy in the ordinary course of law.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 152 (1967).  To do so, Saia must demonstrate that the commission abused its discretion in "that the commission's decision was rendered without some evidence to support it."  *State ex rel. Burley v. Coil Packaging, Inc.,* 31 Ohio St.3d 18, 20 (1987).  Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).  Therefore, to be entitled to a writ of mandamus, Saia must show that the commission's decision is not supported by some evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986).  We note that questions of credibility and the weight to be given to evidence are clearly within the discretion of the commission as the fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981).

{¶ 23} In his first objection to the magistrate's decision, Saia challenges the SHO's finding that he was not feasible for vocational rehabilitation because he did not intend to return to the workforce.  In so arguing, Saia points us to the January 2, 2020 BWC order, which granted him TTD compensation for the allowed conditions in his claim beginning October 1, 2019, one day after his alleged retirement date.  Saia argues that the SHO and magistrate erred in finding he had left the workforce for reasons unrelated to his claim when he was already determined to be disabled due to the allowed conditions.  Saia also points us to his own testimony to the SHO wherein he stated he could no longer perform his construction job.

{¶ 24} Saia argued this point before the magistrate who, in turn, interpreted it as a challenge to the commission's determination that Saia was not feasible for vocational rehabilitation services.  We reiterate, as long as there is some evidence in the record to

support the commission's decision, there is no abuse of discretion. *State ex rel. Block v. Indus. Comm.*, ___ Ohio St.3d ___, 2023-Ohio-4184, ¶ 13. Here we find no error in the magistrate's decision. As the magistrate noted, there is evidence in the record that supports the commission's determination, namely Saia's own testimony that he had retired and that it was not a disability retirement. Saia points to conflicting evidence, including his testimony that he could no longer perform his construction job, but even if there is "conflicting evidence before the commission, this court does not re-weigh the evidence in mandamus." *State ex rel. Cincinnati, Inc. v. Indus. Comm.,* 10th Dist. No. 04AP-241, 2005-Ohio-516, ¶ 6.

{¶ 25} Similarly, in Saia's second and third objections to the magistrate's decision, he asks this court to re-weigh the evidence that was before the commission. In his second objection, Saia argues that the magistrate erred in finding no abuse of discretion and that the SHO erred in finding that he did not have an intent to return to the workforce and also that "[Saia] never intended to return to the work force until his benefits were terminated in this claim." (Record of Proceedings at 21002-X1.) As he argued to the magistrate, Saia claims those statements are contradictory and constitute an admission that Saia did intend to return to the workforce. In his third objection, he argues the SHO failed to give proper weight to Saia's indication in his October 23, 2019 C-84 request for TTD that he would consider participating in vocational rehabilitation. Both of these objections center around the commission's role as fact finder, including its duty to weigh the evidence. As the magistrate noted, the SHO could have concluded based on Saia's testimony that he lacked actual intent to return to the workforce, and the presence of contrary evidence is immaterial where some evidence supports the commission's determination. *State ex rel. Vonderheide v. Multi-Color Corp.,* 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14.

{¶ 26} Saia's fourth objection concerns the SHO's finding that Saia was not feasible for vocational rehabilitation because he was declared to be at MMI. Saia argues that reaching MMI does not preclude him from being feasible for vocational rehabilitation, with which the magistrate agreed. Again, however, it does not ultimately change that there was some evidence in the record to support the commission's determination.

{¶ 27} Finally, Saia argues that the commission erred in failing to find he lacked a "significant impediment" to return to the workforce as the result of the allowed conditions

in the claim under Ohio Adm.Code 4123-18-03(C)(2)'s eligibility requirements. Saia directs us to Dr. Copp's MEDCO-14 from November 22, 2021, which set forth work restrictions for Saia including, but not limited to: taking periodic breaks when sitting, walking and standing; weight restrictions in lifting or carrying; no squatting, kneeling, or climbing; and only occasional bending, twisting, turning, and reaching above the shoulder. However, Ohio Adm.Code 4123-18-03(B) requires both a finding of *eligibility* and *feasibility* for vocational rehabilitation services. As we have already found no abuse of discretion in the commission's determination that Saia was not feasible for vocational rehabilitation, we can find no abuse of discretion in the commission's decision.

## III.  CONCLUSION

{¶ 28}  Following an independent review of this matter, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision, including the findings of fact and conclusions of law contained therein, as our own. In accordance with the magistrate's decision, relator's objections are overruled, and we deny Saia's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

DORRIAN and EDELSTEIN, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Anthony Saia, | : | |
| Relator, | : | |
| v. | : | No. 22AP-667 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 6, 2023

*Nager, Romaine & Schneiberg Co., L.P.A., Catherine Lietzke,* and *C. Bradley Howenstein,* for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Stefanik, Iosue & Associates, LLC, Thomas J. Stefanik, Jr., Mary Eileen Purcell,* and *Stacy M. Stefanik,* for respondent City of Painesville.

IN MANDAMUS

{¶ 29} Relator, Anthony Saia, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to allow relator to participate in vocational rehabilitation, or, in the alternative, a limited writ remanding this matter to the commission for a rehearing on the merits.

**I. Findings of Fact**

{¶ 30} 1. Relator sustained an injury on July 25, 2014 in the course of and arising out of his employment with respondent City of Painesville, Ohio ("Painesville"). Relator's

workers' compensation claim ("the 2014 claim")[1] was ultimately allowed for the following conditions: "sprain left ankle; sprain right knee; sprain left shoulder; contusion left shoulder; contusion upper left arm; contusion left elbow; left shoulder impingement syndrome; substantial aggravation of pre-existing tear medial meniscus right knee; substantial aggravation of pre-existing arthritis of right knee; left shoulder slap tear; tear of right lateral meniscus posterior horn; posterior right cruciate ligament tear; right chondromalacia patellae; progressive degeneration of right knee medial compartment." (Stip. at  4.) Relator's claim was ultimately disallowed for: "cervical sprain; substantial aggravation of pre-existing sciatica; substantial aggravation of pre-existing sprain of neck, left; generalized anxiety disorder." (Stip. at 4.)

{¶ 31} 2. On December 22, 2015, a vocational rehabilitation closure report was issued. In the report, it was noted that relator was "working in a transitional capacity for [Painesville], staying within the work restrictions imposed by his physician." (Stip. at 74.) Regarding the closure, the case manager reported that during a conversation with relator, relator stated that "he is not interested in participating in voluntary job retention services and consequently his job retention file has been closed." (Stip.at 74.)

{¶ 32} 3. On September 10, 2019, a commission district hearing officer ("DHO") issued an order granting allowances for the following previously-mentioned conditions: tear of right lateral meniscus posterior horn; posterior right cruciate ligament tear; right chondromalacia patellae; progressive degeneration of right knee medial compartment. This order was affirmed by commission staff hearing officer ("SHO") in an order mailed November 26, 2019. R.71, 48

{¶ 33} 4. Following an October 22, 2019 exam, Laurence H. Bilfield, M.D., noted that relator "reported he retired about 2 weeks ago, but up until that time he was working full duty." (Stip. at 54.) In a MEDCO-14 physician's report of work ability form ("MEDCO-14") dated October 22, 2019, David Copp, D.C., stated that relator was "not able to work his job for [Painesville] due to severe flare up of right knee pain necessitating the need for right knee surgery." (Stip. at 64.) Dr. Copp stated that relator "had to stop work due to severe work flare up [of right] knee." (Stip. at 64.)

---

[1] Unless specifically noted otherwise, all subsequent findings relate to this 2014 claim.

{¶ 34} 5. Relator filed a C-84 request for temporary total disability ("TTD") compensation dated October 23, 2019. Relator indicated the last date worked was September 30, 2019 and provided "work related injuries" as the reason for leaving. (Stip. at 50.)

{¶ 35} 6. In a December 13, 2019 orthopedic consultation, Philip Golnick, PA-C, noted that relator "has difficulty with day-to-day activities and had to retire early from his company secondary to the issues for his right knee as well as other body part." (Stip. at 45.) It was further noted that relator elected to proceed with a right total knee replacement surgery. Following this consultation, Peter J. Brooks, M.D., performed a right total knee replacement surgery on relator on February 24, 2020.

{¶ 36} 7. In a January 2, 2020 order issued prior to the total knee replacement surgery, the Bureau of Workers' Compensation ("BWC") granted relator TTD compensation beginning October 1, 2019. On May 18, 2021, a commission SHO held a hearing regarding a motion to terminate relator's TTD compensation. In an order issued May 20, 2021, the SHO found relator had reached maximum medical improvement ("MMI") and terminated relator's TTD compensation effective May 18, 2021.

{¶ 37} 8. In a separate claim arising out of a December 18, 2017 injury ("the 2017 claim"), Dr. Copp filed a C-9 request for relator to participate in vocational rehabilitation services on October 26, 2021. The BWC denied the request for vocational rehabilitation in the 2017 claim in an order mailed November 4, 2021.

{¶ 38} 9. In a MEDCO-14 in the 2014 claim dated November 22, 2021, Dr. Copp provided estimations of relator's return to work date and listed specific physical restrictions regarding the allowed conditions.

{¶ 39} 10. Dr. Copp filed a C-9 request for vocational rehabilitation services in the 2014 claim on December 2, 2021. In a November 30, 2021 letter regarding the request for vocational rehabilitation services, Dr. Copp noted relator's surgeries following the initial injury. Dr. Copp stated that relator "has impairments of restricted right knee and left shoulder range of motion with limited strength and function, which is attributing to a barrier for a safe return to work without the assistance of vocational rehabilitation." (Stip. at 18.) Dr. Copp concluded that vocational rehabilitation was medically necessary because relator "remained disabled under this claim" and was at MMI. (Stip. at 18.)

{¶ 40} 11. A managed care organization ("MCO") feasibility determination dated December 8, 2021 found relator to be feasible for vocational services in the 2014 claim.

{¶ 41} 12. The BWC denied relator's December 2, 2021 request to participate in vocational rehabilitation in an order mailed December 8, 2021. The BWC order provided the following basis for the decision:

> This decision is based on the finding that though you have eight (8) or more lost time days, you have not received Temporary Total compensation including the date of referral. Salary Continuation in lieu of Temporary Total compensation including the date of referral. Permanent Total compensation including the date of referral, have not received or been awarded Non-Working Wage Loss including the date of referral, have not been granted a Scheduled Loss Award, do not have a Catastrophic injury claim for which a vocational goal may be established and though you are not receiving compensation, you do not have current job restrictions in the claim documented by the physician of record that are not dated more than 180 days prior to the date of referral and therefore, you do not have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the claim.

(Stip. at 11.)

{¶ 42} 13. On January 12, 2022, a commission DHO conducted a hearing on the December 2, 2021 request for vocational rehabilitation services. The DHO vacated the December 8, 2021 BWC order but maintained the denial of the request for vocational rehabilitation services in an order mailed January 14, 2022. In the order, the DHO stated the following with regard to relator's testimony:

> [Relator] further confirmed that he retired as of 09/30/2019. [Relator] testified this was not to disability retirement, nor is he receiving Social Security disability.
>
> [Relator] testified he was waiting a couple more years to apply for Social Security so that he could receive more money and is presently receiving a pension from [Painesville].
>
> [Relator] testified that he was unable to continue to do his construction job any further. However, confirmed this was not a disability retirement.

(Stip. at 8.) The DHO found relator "has not re-entered the workforce in approximately seven-years, nor is the evidence dispositive of his intent to re-enter the workforce." (Stip. at 8.)

{¶ 43} 14. On February 25, 2022, a commission SHO conducted a hearing on appeal from the January 14, 2022 DHO order. In an order mailed March 2, 2022, the SHO modified the DHO order and denied the December 2, 2021 request for vocational rehabilitation services. The SHO found "insufficient evidence that [relator] is feasible to participate in vocational rehabilitative services" and "a lack of intent to return to the work force." (Stip. at 4.) The SHO noted the following: "[Relator] took a regular retirement in 2019. He was declared to be at maximum medical improvement as of 05/18/2021. He also applied for vocational rehab in his 2017 claim in November 2021, which was denied by the [BWC]. He is actively treating and pursuing additional allowances in that claim." (Stip. at 4.) Furthermore, the SHO found relator "has not met his burden of proof that he is eligible for vocational services and that he never intended to return to the work force until his benefits were terminated in this claim." (Stip. at 5.) The SHO relied on the BWC's finding that relator did "not have a significant impediment to return to the work force as a result of the allowed conditions of this claim." (Stip. at 5.)

{¶ 44} 15. Relator filed an appeal to the commission from the March 2, 2022 SHO order on March 18, 2022. The commission refused the appeal in a March 23, 2022 order.

{¶ 45} 16. Relator filed a complaint in mandamus in the current action on November 1, 2022.

## II. Discussion and Conclusions of Law

{¶ 46} Relator seeks a writ of mandamus ordering the commission to approve vocational rehabilitation services requested in his 2014 claim.

## A. Requirements for Mandamus

{¶ 47} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 48} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*.

## B. Vocational Rehabilitation Eligibility and Feasibility

{¶ 49} Vocational rehabilitation is "the process of restoring the vocational functioning of a worker who experiences a work[-]related injury and who voluntarily agrees to participate in vocational rehabilitation." Ohio Adm.Code 4123-18-03(C). Under R.C. 4121.61, the BWC administrator is required to "adopt rules, take measures, and make expenditures as it deems necessary to aid claimants who have sustained compensable injuries or incurred compensable occupational diseases * * * to return to work or to assist in lessening or removing any resulting impairment."[2] Consistent with this statutory mandate, Ohio Adm.Code Chapter 4123-18 was adopted, providing rules regarding the rehabilitation of injured and disabled workers.

{¶ 50} At the time the request for vocational rehabilitation services was filed and resolved in this matter,[3] Ohio Adm.Code 4123-18-03 provided rules and guidelines for referral to and acceptance into vocational rehabilitation. Under Ohio Adm.Code 4123-18-03(B), "[a]n injured worker shall not be able to participate in a vocational rehabilitation plan or receive vocational rehabilitation services until the injured worker has been determined to be both eligible and feasible for vocational rehabilitation services." Ohio Adm.Code 4123-18-03(C), which pertains to eligibility for vocational rehabilitation services, provided as follows:

> To be eligible for rehabilitation services the injured worker

---

[2] The quoted language reflects R.C. 4121.61 as amended by Am.Sub. H.B. 281 effective April 3, 2023 as opposed to the language in effect at the time of relator's request to participate in vocational rehabilitation. The alterations to the text were not substantive or material to the instant matter, but instead reflected the act's purpose to modify terminology in the Revised Code regarding people with mental illnesses and disabilities.

[3] Significant amendments were made to Ohio Adm.Code 4123-18-03 effective May 15, 2023. All references to this section reflect the prior version that was last amended October 7, 2019 and was in effect when the commission resolved relator's request for vocational rehabilitation services. *See generally State ex rel. Honda of Am. Mfg. v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-315, 2021-Ohio-2113, ¶ 9 (finding former version of Ohio Administrative Code provision in effect at the time of the commission's final order applied to workers' compensation claim).

must meet the following criteria:

(1) The injured worker must have a claim that is

(a) Allowed by an order of the bureau of workers' compensation or the industrial commission or of its hearing officers with eight or more days of lost time due to a work related injury; or

(b) Certified by a self-insuring employer.

(2) The injured worker must have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the referred claim.

(3) The injured worker must have at least one of the following present in the referred claim:

(a) The injured worker is receiving or has been awarded temporary total, non-working wage loss, or permanent total compensation for a period of time that must include the date of referral. For purposes of this section, payments made in lieu of temporary total compensation (e.g. salary continuation) shall be treated the same as temporary total compensation; or

(b) The injured worker was granted a scheduled loss award under division (B) of section 4123.57 of the Revised Code; or

(c) The injured worker is not currently receiving compensation and has job restrictions in the claim documented by the physician of record and dated not more than one hundred eighty days prior to the date of referral; or

(d) The injured worker is receiving job retention services to maintain employment or satisfies the criteria set forth in paragraph (E) of this rule on the date of referral; or

(e) The injured worker sustained a catastrophic injury claim and a vocational goal can be established

(4) The injured worker must not be working on the date of referral, with the exception of referral for job retention services.

{¶ 51} Ohio Adm.Code 4123-18-03(C). Ohio Adm.Code 4123-18-03 also addressed the determination of feasibility for vocational rehabilitation services as follows:

Determination of feasibility for vocational rehabilitation services.

(1) Feasibility for vocational rehabilitation services means, based upon all available information:

(a) The injured worker is willing to participate in vocational

rehabilitation services;

(b) The injured worker is able to participate in vocational rehabilitation services; and

(c) There is a reasonable probability that the injured worker will benefit from vocational rehabilitation services and return to work as a result of the services.

(2) "All available information" means records, documents, written and oral statements, and any and all medical, psychological, vocational, social, and historical data, of any kind whatsoever, developed in the claim through which vocational rehabilitation is sought or otherwise, that is relevant to the determination of an injured worker's feasibility for vocational rehabilitation services.

Ohio Adm.Code 4123-18-03(G).[4]

## C. Application

**{¶ 52}** Relator raises multiple arguments against the SHO's order denying the requested vocational rehabilitation services. The magistrate begins with relator's last argument first. Relator argues the commission abused its discretion by finding vocational rehabilitation was not feasible because relator lacked the intent to return to the workforce. Specifically, relator contends the SHO erred in basing this determination on the factual finding that relator took "regular retirement" on September 30, 2019. Relator points to medical evidence that, according to relator, shows relator's condition was progressively worsening for years and impeding his activities. Relator also points to the September 2019

---

[4] The magistrate notes that the parties refer to different versions of the provision in Ohio Adm.Code 4123-18-03 pertaining to the determination of feasibility for vocational rehabilitation services, including by quoting language that was no longer in effect at the time of the commission's orders resolving relator's request for vocational rehabilitation services.

Adding to the confusion, at the time of this decision, an online reference source includes two subsections labeled "(H)" in its archived version of Ohio Adm.Code 4123-18-03 that became effective October 7, 2019. The first subsection so labeled concerns "[d]etermination of feasibility for vocational rehabilitation services." The second subsection concerns the "[a]ppeal process." No subsection labeled "(G)" is listed. This appears to be a typographical error due to substantial amendments to Ohio Adm.Code 4123-18-03 effective October 7, 2019, which included moving the determination of feasibility for vocational rehabilitation services to subsection (G) from subsection (H). Other historical sources, including the Ohio Monthly Record, list the determination of feasibility for vocational rehabilitation services under Ohio Adm.Code 4123-18-03(G) for timeframe relevant to the instant matter. Sept. 2019 Ohio Monthly Record 2-403.

In an effort to remove as much confusion as possible, citations in this decision to the above quoted provisions pertaining to the determination of feasibility for vocational rehabilitation services are listed as Ohio Adm.Code 4123-18-03(G). As previously indicated, all such references are to the version of Ohio Adm.Code 4123-18-03 in effect at the time of the relevant commission orders in this matter.

DHO order and November 2019 SHO order allowing additional conditions, and the January 2, 2020 BWC order granting relator TTD compensation beginning October 1, 2019, one day after his retirement date. Relator argues "[t]his evidence demonstrates that, Relator could no longer continue to work his job due to the allowed conditions in his claim, and for that reason, took early retirement at age 62." (Relator's Brief at 17.) Relator contends that this "temporary 'retirement' directly necessitated by a worsening of his allowed conditions that required approved knee surgery was not a valid basis for denying him the opportunity to participate in vocational rehabilitation." (Relator's Brief at 17.)

{¶ 53} Finding feasibility for vocational rehabilitation services under Ohio Adm.Code 4123-18-03(G)(1) requires a determination that the injured worker is "willing" and "able" to participate in vocational rehabilitation services, and that there exists a "reasonable probability that the injured worker will benefit from vocational rehabilitation services and return to work as a result of the services." In the January 14, 2022 order denying the request for vocational rehabilitation, the DHO summarized relator's prior statements, noting in particular relator's statement that he retired on September 30, 2019, and that such retirement was not a disability retirement. The DHO specifically noted relator's confirmation in his testimony at the hearing that this was "not a disability retirement." (Stip. at 8.) The SHO found insufficient evidence relator was feasible to participate in vocational rehabilitative services, specifically noting a "lack of intent to return to the work force." (Stip. at 4.) Under Ohio Adm.Code 4123-18-03(G)(1), the determination of feasibility for vocational rehabilitation requires consideration of "all available information." Ohio Adm.Code 4123-18-03(G)(2) defines "all available information" in expansive terms, including "oral statements." Relator's statements are indisputably appropriate information under the definition provided in Ohio Adm.Code 4123-18-03(G)(2) to consider in making the feasibility determination.

{¶ 54} This court has previously stated that "[t]he commission 'has substantial leeway in both interpreting and drawing inferences from the evidence before it.' " *State ex rel. Columbus Distrib. Co. v. Reeves*, 10th Dist. No. 21AP-399, 2023-Ohio-898, ¶ 7, quoting *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34. Furthermore, "the commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive." *State*

*ex rel. Washington v. Indus. Comm.*, 10th Dist. No. 14AP-445, 2015-Ohio-3897, ¶ 11. The SHO's order reflects a determination that relator's evidence was not persuasive with regard to a finding of feasibility. Relator's testimony regarding his regular or nondisability-related retirement constitutes some evidence on which the commission could rely in finding vocational rehabilitation services were not feasible for relator. Notably, relator does not expressly deny the account of his testimony, and the record does not contain a transcript of the January 12, 2022 DHO hearing or the February 25, 2022 SHO hearing. *See State ex rel. Stevens v. Indus. Comm.*, 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 11, quoting *State ex rel. Ormet Corp. v. Indus. Comm.*, 10th Dist. No. 87AP-1187, 1989 Ohio App. LEXIS 3773 (Sept. 26, 1989) (stating that the " 'relator could have requested an admission as to what transpired in this regard, filed an affidavit with respect to what transpired, or taken a deposition of someone who was present as to what transpired at the hearing' "). As this court has previously stated, "[t]he relator, not the respondent, bears the burden to prove entitlement to mandamus relief, and a relator may not avoid that burden simply by noting the absence of a transcript." *Id.* at ¶ 11. *See State ex rel. McKee v. Union Metal Corp.*, 10th Dist. No. 15AP-414, 2016-Ohio-1236, ¶ 7. *See generally State ex rel. Druggan v. Indus. Comm.*, 85 Ohio St.3d 680, 682 (1999), citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197 (1986) ("A presumption of regularity accompanies commission orders.").

{¶ 55} Although relator points to a host of medical and other evidence in arguing that his retirement was due to the allowed conditions and therefore could not provide a valid basis for denying vocational rehabilitation, the presence of contrary evidence is immaterial where some evidence supports the commission's determination. *See State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14, quoting *State ex rel. Pass v. C.S.T.*, 74 Ohio St.3d 373, 376 (1996) (stating that " '[a]n order that is supported by "some evidence" will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's' " (Brackets sic.)); *Bonnlander*, 2020-Ohio-4269, at ¶ 24. It is not this court's role to weigh or second-guess relator's testimony or the inferences raised therefrom. *See State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 21, quoting *State ex rel. Welsh Ents., Inc. v. Indus. Comm.*, 10th Dist. No. 19AP-127, 2020-Ohio-2801, ¶ 26

(stating that "this court 'cannot second guess the commission's judgments either as to witness credibility or on the proper weight to accord particular evidence' ").

{¶ 56} Next, relator argues the SHO erred in finding relator did not intend to return to the workforce until his benefits were exhausted in this claim. Relator contends the SHO's conclusions are contradictory, stating the SHO indicated relator "never demonstrated an intent to return to the work force" and then indicating relator "*did* intend to return to the workforce after his benefits were terminated." (Emphasis sic.) (Relator's Brief at 11.) Relator points to the October 23, 2019 C-84 request for TTD compensation in which relator responded, "Yes," to the question, "If appropriate, would you consider participating in vocational rehabilitation?" (Stip. at 50.) Contrary to relator's contention, the SHO's statements are not inherently contradictory. The SHO found "a lack of intent to return to the work force" and that relator "never intended to return to the work force until his benefits were terminated in this claim." (Stip. at 4-5.) Although the SHO's phrasing is perhaps unclear, it is undisputed that relator's request for vocational rehabilitation services in the 2014 claim was not filed until after relator's TTD had terminated. Despite relator's indication of willingness to participate in vocational rehabilitation services, the SHO could still conclude based on relator's testimony and the inferences drawn from such testimony that relator lacked actual intent to return to the workforce.

{¶ 57} Relator next contends the SHO erred in finding relator was not feasible for vocational rehabilitation because he was declared to be at MMI. Relator argues a finding of MMI in no way precludes a claimant from receiving the benefits of vocational rehabilitation. Relator also argues it was error for the SHO to rely on evidence that relator had been denied participation in vocational rehabilitation services in the 2017 claim in reaching the determination regarding vocational rehabilitation in the 2014 claim. Relator is correct that a finding of MMI does not preclude a finding of eligibility or feasibility for vocational rehabilitation under Ohio Adm.Code 4123-18-03. Nor does a prior denial of vocational rehabilitation in one claim serve to bar a request for vocational rehabilitation in another. However, there is no dispute that the types of information identified—i.e., medical records relating to MMI or records developed in another claim, including the BWC record relating to denial of vocational rehabilitation in the 2017 claim—are appropriate to consider in making a feasibility determination under Ohio Adm.Code 4123-18-03(G). Under Ohio

Adm.Code 4123-18-03(G)(2), "all available information" includes "records, documents, * * * and any and all medical, psychological, vocational, social, and historical data, of any kind whatsoever, developed in the claim through which vocational rehabilitation is sought or otherwise" as relevant to a determination of feasibility for vocational rehabilitation services. Thus, the SHO could properly weigh and draw inferences from this information in analyzing feasibility for vocational rehabilitation. Furthermore, despite relator's disagreement with the SHO's findings regarding this information, such disagreement does not alter the fact that relator's testimony constitutes some evidence the SHO could use in determining the feasibility of vocational rehabilitation.

{¶ 58} Finally, relator argues the commission abused its discretion in expressly relying on an inaccurate BWC finding to conclude relator was not eligible for vocational rehabilitation because he lacked a significant impediment to return to the workforce as the result of the allowed conditions in the claim. In the December 8, 2021 BWC order denying vocational rehabilitation, it was stated that the denial was based in part on the fact that "you do not have current job restrictions in the claim documented by the physician of record that are not dated more than 180 days prior to the date of referral and therefore, you do not have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the claim." (Stip. at 11.) Relator points to the findings of Dr. Copp in the November 22, 2021 MEDCO-14 setting forth physical restrictions due to the allowed conditions in the claim.

{¶ 59} In the November 22, 2021 MEDCO-14, Dr. Copp estimated relator could return to the job held on the date of the injury beginning on January 15, 2022 and further estimated relator could return to other available and appropriate work with restrictions on December 15, 2021. Dr. Copp indicated relator could work 40 hours per week, 8 hours per day, with the following restrictions for an 8-hour workday: sitting for 4 hours with break, walking for 2 hours with break, and standing for 2 hours with break. Dr. Copp also noted no lifting or carrying above 10 pounds; occasional lifting or carrying up to 10 pounds; no pushing or pulling above 25 pounds; occasional lifting up to 25 pounds; no squatting, kneeling, or climbing; occasional bending, twisting, turning, and reaching above shoulder; typing/keyboard frequently.

{¶ 60} Insofar as the BWC stated relator did not have current job restrictions at the time of the December 8, 2021 order, such finding appears to have been in error. However, it is not clear that the restrictions identified by Dr. Copp in the November 22, 2021 MEDCO-14 constitute a significant impediment to employment under Ohio Adm.Code 4123-18-03(C)(2). Under that section, in order to be eligible for rehabilitation services, the "injured worker must have a significant impediment to employment or the maintenance of employment as a direct result of the allowed conditions in the referred claim." Ohio Adm.Code 4123-18-03(C)(2). Significant impediment is not defined. Relator provides no authority establishing that the commission was prohibited from finding relator lacked a significant impediment based on the restrictions outlined by Dr. Copp. However, regardless of any error in relying on the December 8, 2021 BWC order in determining relator was not eligible for vocational rehabilitation under Ohio Adm.Code 4123-18-03(C) because there was not a significant impediment to work, relator's testimony remains some evidence on which the SHO could rely in reaching the determination regarding feasibility for vocational rehabilitation under Ohio Adm.Code 4123-18-03(G). As this evidence provides an independent basis for the SHO's denial of the request for vocational rehabilitation, relator has not established entitlement to relief in mandamus. *See State ex rel. Pritt v. Indus. Comm. of Ohio*, 10th Dist. No. 17AP-98, 2018-Ohio-1066, ¶ 13 (holding commission did not abuse its discretion in denying PTD application even though the SHO's order contained errors because there was some evidence supporting an independent basis for the commission's determination); *State ex rel. Potts v. Fayette Tubular Prods.*, 10th Dist. No. 07AP-505, 2008-Ohio-1218, ¶ 5 (finding SHO's reliance on an erroneous statement of facts prepared by the commission, thereby resulting in a factual error in the SHO's decision, did not entitle the relator to relief in mandamus where there was other evidence to support the SHO's finding).

{¶ 61} Under Ohio Adm.Code 4123-18-03(B)(4), participation in vocational rehabilitation services is conditioned on a finding that the party seeking such services is both eligible and feasible for the services. Based on relator's testimony and the commission's inherent fact-finding authority, including the responsibility for weighing and evaluating testimony and the inferences raised therefrom, the magistrate cannot conclude

the commission abused its discretion in denying the request for vocational rehabilitation services.

## D. Conclusion

{¶ 62} Based on the foregoing, relator has not established a clear legal right to the requested relief or that the commission was under a clear legal duty to provide it. Accordingly, it is the decision and recommendation of the magistrate that the requested writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.